HARGADINE *et al.*, *Appellants*, v. HENDERSON *et al.*

1.  **Assignment:** DEED OF TRUST: DISTINCTION. An assignment for the benefit of creditors inures to the benefit of all the creditors of the grantor, while a deed of trust in the nature of a mortgage is for the benefit of only those named therein.

2.  ———— : ———— : ————. An assignment is a conveyance to a trustee for the purpose of raising funds to pay a debt, while a deed of trust, in the nature of a mortgage, is a conveyance in trust for the purpose of securing a debt, subject to a condition of defeasance. The radical distinction between them exists in the equitable interest which the grantor, in the case of a deed of trust, still retains in the assigned property, which interest is usually disclosed by a clause of defeasance in the instrument.

3.  ———— : ———— : ————. But an express provision of defeasance is not essential to characterize an instrument as a mortgage. If, from its nature, either standing alone or read in the light of the surrounding circumstances, it appears to have been given as a security, it must be considered as a mortgage.

4.  ———— : ————: EXCESS. Whether an instrument be an assignment or a mortgage, if a surplus remains in the hands of the trustee, after the purposes of the trust have been discharged, it will go to the grantor, in whose favor a resulting trust for such excess will be implied, although it be not expressed in the conveyance.

5.  **Mortgage:** EQUITY. An instrument intended merely as a security for the payment of a debt, and an indemnity to save harmless a security, will, in equity, be held to be a deed of trust in the nature of a mortgage, with a right of redemption in the mortgageor if exercised before the property is applied to the purposes of the trust.

*Appeal from Howard Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

AFFIRMED.

*Walker & Johnston* and *R. C. Caples* for appellants.

(1) In this conveyance, there is no condition of

| | |
|---|---|
| 97 | 375 |
| 39a | 368 |
| 97 | 375 |
| 114 | 603 |
| 97 | 375 |
| 120 | 328 |
| 97 | 375 |
| 123 | 325 |
| 58a | 585 |
| 59a | 559 |
| 97 | 375 |
| 128 | 488 |
| 97 | 375 |
| 130 | 125 |
| 64a | 135 |
| 97 | 375 |
| 133 | 497 |
| 97 | 375 |
| 68a | 295 |
| 97 | 375 |
| 138 | 460 |
| 97 | 375 |
| 148 | 344 |
| 77a | 421 |
| 97 | 375 |
| 159 | 330 |
| 97 | 375 |
| 91a | 605 |
| 97 | 375 |
| 100a | 5 664 |

defeasance, but by it Henderson absolutely appropriated all of his property, except his exemptions, to the payment of the debts named, and delivered the immediate possession to Harrison, to sell and raise a fund with which to pay said debts.   "It does not purport to be a security for a debt, with power to sell if the debt be not paid when due.   It conveys the property absolutely to trustees, to be sold for the payment of debts named and preferred in it.   It is clearly a partial assignment for the benefit of creditors, and not a mortgage security.   Such instruments have always been treated as assignments." *State v. Benoist*, 37 Mo. 500.   "An assignment is more than a security for the payment of debts ; it is an absolute appropriation of property to their payment. * * * The distinction is, that an assignment 'is a conveyance to a trustee for the purpose of raising funds to pay a debt, while a deed of trust in the nature of a mortgage is a conveyance in trust for the purpose of securing a debt subject to a condition of defeasance.'" *Crow v. Beardsley*, 68 Mo. 435 ; Burrill on Assignments ( 5 Ed. ) p. 12, sec. 6 ; *Hoffman v. Mackall*, 5 Ohio St. 124 ; *Woodruff v. Robb*, 19 Ohio, 212 ; 2 Pomeroy's Eq. Jur. p. 543, sec. 995 ; Jones on Chat. Mort. secs. 8, 17, 34 ; *Smith v. Thurman*, 29 Mo. App. 186 ; *Mills v. Williams*, 31 Mo. App. 447. (2)   Under the provisions of R. S. 1879, sec. 354, there can be no preference, but the assignment inures to the benefit of all creditors whether named or not.   *Crow v. Beardsley*, 68 Mo. 435 ; *Ring v. Ring*, 12 Mo. App. 88 ; *Douglass v. Cissna*, 17 Mo. App. 44 ; *Sampson v. Shaw*, 19 Mo. App. 274 ; *Jeffries v. Bleckmann*, 86 Mo. 350 ; *Rapier v. Gulf City Co.*, 64 Ala. 330 ; *Lehman v. Mfg. Co.*, 64 Ala. 567 ; *Ebersale v. Adams*, 73 Ky. 83 ; *Cecil v. Sowards*, 73 Ky. 96 ; *Roberts v. Phillips*, 74 Ky. 11.   (3)   Although the conveyance in controversy may have been made without any reference to the assignment law, yet it will be enforced in accordance with the provisions of that law.   *State to use v. Benoist*,

37 Mo. 500; *Douglass v. Cissna*, 17 Mo. App. 44; *Fant v. Elsbury*, 68 Tex. 1; *Crow v. Beardsley*, 68 Mo. 435; *Mills v. Williams*, 31 Mo. App. 447.

*Thos. Shackleford* and *Draffen & Williams* for respondents.

(1) A debtor may prefer one creditor to another, and insolvency does not deprive him of that right. He may sell, mortgage or pledge the whole, or any part of his property, for the benefit of one or more of his creditors to the exclusion of all others, and if the transfer is *bona fide*, it will be sustained. *Daugherty v. Cooper*, 77 Mo. 528; *Singer v. Goldenburg*, 17 Mo. App. 549; *Ames v. Gilman*, 59 Mo. 537. (2) The debtor is only deprived of this right, when he undertakes to avail himself of the provisions of the statute in reference to assignments. Preferences are prohibited only where the party executes " an assignment for the benefit of creditors." *Gilbert v. McCorkle*, 8 Western Rep. 911; *Gummersell v. Hanbloom*, 19 Mo. App. 274; *Rollins v. Van Baalen*, 56 Mich. 610; *Lampson v. Arnold*, 19 Iowa, 479; *Farwell v. Howard*, 26 Iowa, 381. (3) The statute of this state in regard to assignments is founded upon an entirely different basis from a bankrupt law. *Gummersell v. Hanbloom*, 19 Mo. App. 274. (4) The instrument in controversy is not an assignment. "An assignment divests the assignor of any interest, legal or equitable, in the assigned property, and he can re-acquire title to it only through such means as may be requisite to an original acquisition of title." On the other hand, " when it appears that the leading purpose of the instrument is to give security to the creditor or creditors, the debtor making it will be deemed to have the right, at any time before the property is sold, to avoid it by paying the debt or debts secured. In such case, even when a mortgage is held to pass the legal title to the thing mortgaged, a condition of defeasance will be implied, if

it be not expressed.   When such condition is expressed
or may be implied, the instrument must be held to be a
mortgage, or in the nature of a mortgage." *Waterman
v. Silverberg*, 2 S. W. Rep. 578 ; *State ex rel. v. Cooper*,
79 Mo. 464 ; *Scott v. McDaniel*, 3 S. W. Rep. 291 ;
*Smith v. Thurman*, 29 Mo. App. 186 ; *Lampson v.
Arnold*, 19 Iowa, 479 ; *Van Patten v. Thompson*, 34 N.
W. Rep. 763.   (5)  The grantor, in the instrument in
controversy,  might  have redeemed the property at any
time before sale, by the payment of the debts mentioned
therein.   The instrument upon its face,  purports to be
given for the purpose of "securing  the debts, and of
protecting and saving harmless " certain sureties of the
grantor.   In such cases a condition of defeasance will be
implied if not expressed.  *Waterman v. Silverberg*, 2 S.
W. Rep. 578 ; *Shradski v. Albright*, 93 Mo. 42 ; *Smith
v. Beatie*, 31 N. Y. 542 ; *Stonebraker v. Ford*, 81 Mo.
532 ; *Dunham v. Whitehead*, 21 N. Y. 131 ; *Gage v.
Cheesebro*, 49 Wis. 486.   (6)  The conveyance not only
purports to be given  for  the  purpose of securing  the
existing debts mentioned  therein,  but  also,  to provide
an indemnity to the grantor's sureties against future
loss ; and  in  addition,  makes provisions for future
advances by the bank.   An assignment is a present,
absolute transfer to raise money to pay existing debts.
*Gage v. Cheesebro*, 49 Wis. 486-90 ; *Crow v. Beardsley*,
68 Mo. 435.   (7)  This instrument does not come within
the evils sought to be remedied by the prohibition
against preferences contained in the assignment law.
Preferences are allowed, when any  other kind of con-
veyance except an assignment is used.   The reason for
this distinction is, because, where an assignment is
resorted to, the property is withdrawn entirely from the
reach of other creditors until the trusts thereby created
are carried out.   Here a lien only was created upon the
property.  *McCorkle v. Gilbert*,  8 West. Rep. 911.
(8)  The true test by which to determine whether the

conveyance in the case at bar is an assignment for the benefit of creditors, or a mere security, is found in answer to the question, whether upon a bill to redeem the grantor would be permitted to do so. If, by paying the debts, and discharging the other conditions of the instrument, before sale, he would have been entitled to redeem, and no reconveyance would have been required to revest the title in him, the instrument must be a mere security. The fact that the trustee was authorized to take possession of and sell the property does not determine its, character. The same provision was in the instruments considered in the following cases which were declared mortgages, or deeds of trust in the nature of a mortgage: *Waterman v. Silverberg*, 2 S. W. Rep. 578; *State ex rel. v. Cooper*, 79 Mo. 464; *Scott v. McDaniel*, 3 S. W. Rep. 291; *Smith v. Thurman*, 29 Mo. App. 186; *Gage v. Chesebro*, 49 Wis. 486.

BRACE, J.—On the seventeenth day of September, 1885, the plaintiffs (on behalf of themselves and the other creditors of the defendant John F. Henderson) filed in the Howard county circuit court a petition, stating that on the twenty-second day of June, 1885, the defendant John F. Henderson had duly executed and acknowledged the following conveyance, to-wit:

"Know all men by these presents, that whereas, I, John F. Henderson of Howard county, in the state of Missouri, am justly indebted to the Glasgow Savings Bank, a corporation, incorporated by the laws of the state of Missouri, in the following sums and evidenced by the following notes: First note dated October 13, 1883, due four months after date for three thousand dollars, with interest from maturity at the rate of ten per cent. per annum, credited July 23, 1884, with one hundred and thirty 83-100 dollars; second note, dated August 1, 1883, due four months after date, for four thousand dollars, with interest from maturity, at rate of ten per cent. per annum, credited December 4, 1883,

with interest paid to April 7, 1884, May 18, 1885, thirty dollars, June 9, 1885, four hundred dollars; third note dated December 4, 1883, due three months after date, for five hundred dollars, with interest from maturity at eight per cent. per annum, credited December 9, 1884, twenty-five dollars, February 3, 1885, forty-five dollars, May 26, 1885, one hundred and forty dollars; fourth note, dated October 3, 1884, due one day after date, for three hundred and forty-eight 85-100 dollars, with interest from date, at the rate of ten per cent. per annum, credited February 12, 1885, by one hundred and sixty and 40-100 dollars; fifth note, dated October 4, 1884, due one day after date, for fifteen hundred dollars, with interest from date at the rate of ten per cent. per annum, which note is also executed by William White and Joseph S. Henderson, as security. And whereas, also, A. Frank & Sons obtained a judgment against said Henderson, at June term, 1885, of Howard county circuit court, for five hundred and seventy-two 80-100 dollars, being debt and costs, interest at six per cent.; and also Walter H. Teumy & Company obtained judgment at the same term, for debt and costs, seven hundred and fourteen 86-100 dollars; and also John B. Farwell & Company obtained judgment at the same term, for one hundred and sixty-eight 55-100 dollars, debt and costs; and Thomas E. Birch and George B. Harrison executed a delivery bond to the sheriff of Howard county as surety for said Henderson to secure the payment of said judgment on which execution had been issued. Now, therefore, the said John F. Henderson is desirous of securing said debts, and of protecting and saving harmless his securities as aforesaid; therefore, I, the said John F. Henderson, do by these presents bargain, sell, transfer and deliver into the immediate possession of George B. Harrison of Howard county, in the state of Missouri, all the stock of goods, merchandise, consisting of dry goods, clothing, hats and

caps, boots and shoes, notions, gents' furnishing goods, stoves, mirrors, show-cases, writing-desks, chandeliers and lamps, being all the personal property of every kind, not attached to house, in the store-room situated on lot one, block five, city of Glasgow, known as Pythian Building, in said city of Glasgow ; also two shares of Howard County Bank stock, No. 139, and ten shares Wabash, St. Louis and Pacific, Nos. 27 and 66. The said Harrison, as trustee, takes immediate possession of said stock and takes a complete inventory of said stock of goods, after which he shall, as such trustee, proceed to sell the said stock of goods at private sale, at the best price that can be obtained, and at his discretion shall proceed to sell said stock of goods at public sale whenever he shall deem it of advantage to said creditors. After selling said stock of goods the said George B. Harrison shall, after deducting the expenses of insuring, taking care of and selling said goods, proceed to divide the proceeds between the creditors above named, and in case said securities shall pay said debts referred to, then the said securities shall be refunded the amount so paid. The said trustee may out of the proceeds pay a balance due to Teft, Weller & Company, for about three hundred dollars, to secure which they hold a chattel mortgage on part of all of said goods. And whereas, the said John F. Henderson was the owner of 152 shares of stock in a corporation known as the Pythian Hall Association in the city of Glasgow, and said notes, described as first and second, were secured by deposit of said stock as collateral, the said Henderson being the owner of the largest number of shares of said stock, therefore the said John F. Henderson transfers said stock to said trustee to be sold at public sale, giving twenty days notice in a newspaper printed in Howard county. The said Henderson and other stockholders will be compelled to borrow about twenty-five hundred dollars to repair the building, partially destroyed by the

tornado on the night of the twentieth of June, 1885, and the Glasgow Savings Bank will be compelled to loan said corporation sufficient to make repairs and protect the property ; therefore said advances shall be paid first out of the sale of said stock of the Pythian Hall Association, and the balance appropriated to payment of the two notes for which said stock is held as collateral ; also pay Howard county and Wabash stock, on notes for which it was collateral. It being the object and intention of this deed to convey to said trustee all his interest in said Pythian Building, situated on lot one, block five, in the city of Glasgow. The said Henderson also conveys to said trustee all notes and accounts due him for goods sold, which said trustee shall inventory when he takes account of stock. The said Geo. B. Harrison, having accounted for all the above property, and discharging all of said debts, if any sum shall remain over, shall pay over the excess to the said John F. Henderson, or his legal representative. And the said Harrison accepted said trust, agreeing to administer the same to the best of his ability.

.'' In witness whereof the said parties have hereto set their hands and seals, this twenty-second day of June, A. D. 1885.

> '' J. F. HENDERSON, ( Seal )
> '' GEO. B. HARRISON, ( Seal ).''

That said conveyance was duly acknowledged, and was, on the twenty-third of June, 1885, filed for record in the office of the recorder of Howard county, Mo.; that the legal effect of said conveyance was an immediate and absolute appropriation of said property and effects of the said Henderson to the payment of said debts therein recited, and was and is a voluntary deed of assignment for the benefit of creditors, and although made for the sole benefit of the creditors therein named, inures, under and by virtue of the provisions of the statutes of the state of Missouri, to the benefit of all

the creditors of the said Henderson; that said convey-
ance included all of the property of said Henderson of
every kind, and that at the time of the execution of
said conveyance, said Henderson was wholly insolvent;
that the defendant, George B. Harrison, had failed and
refused to treat said conveyance as an assignment; and
praying the court that said conveyance be declared to
be a voluntary assignment for the benefit of all the
creditors of said Henderson, and the preferences therein
given be declared void, and the said Henderson be
required to proceed as assignee under the statute.

All the defendants answered, denying the allega-
tions of the petition.

On the trial the plaintiffs introduced the foregoing
deed in evidence and the following agreed statement of
facts: "That the defendant John F. Henderson, in the
conveyance to George B. Harrison, referred to in the
pleadings, conveyed to said Harrison all of the property
belonging to said Henderson at the date of said con-
veyance, except his homestead valued at about two thous-
and dollars, which was encumbered by a deed of trust
securing a debt of some two thousand dollars, which was at
the time unpaid, and except his household furniture and
a horse and buggy; that plaintiffs, at the time of said con-
veyance, were creditors of Henderson, and that the facts
stated in the separate answer of Birch and Harrison, in
relation to the levy by the sheriff of Howard county,
and the execution of the delivery bonds by the securi-
ties for defendant Henderson are true as therein
stated."

The court dismissed the bill and the plaintiffs
appeal. The *bona fides* of this transaction is not ques-
tioned. Whether the instrument be an assignment for
the benefit of creditors, as contended for on the one side,
or a deed of trust in the nature of a mortgage, as con-
tended for on the other, it is a valid conveyance, to
the enforcement of which the courts, if need be, will

lend their assistance.   R. S. 1879, chap. 5, Of Assign-
ments, and chap. 68, Of Trusts.   The difference that
will result to the parties interested by the determination
of the question whether it belongs to the one or to the
other class, grows out of the fact that if it be held to be
an assignment, the conveyance will inure to the benefit
of all of the creditors of the grantor instead of to the
benefit of those only therein named, as will be the case
if it is held to be a mortgage.   R. S. sec. 354 ; *Crow v.
Beardsley*, 68 Mo. 435.

The distinction between the nature of these trusts is
indicated in a general way by the statute.   In regard to
assignments, the form of expression is :   "Every volun-
tary assignment   *   *   *   made by a debtor to any
person in trust for his creditors."   R. S. sec. 354.   In
regard to trusts in the nature of a mortgage, it is "in
any deed of trust to secure the payment of a debt or
other liabilty."   R. S. sec. 3929.   In *Crow v. Beards-
ley, supra*, quoting the language of Bartley, J., in
*Hoffman v. Mackall*, 5 Ohio St. 124, it is said :   "The
distinction is that an assignment 'is a conveyance to a
trustee for the purpose of raising funds to pay a debt,
while a deed of trust in the nature of a mortgage is a
conveyance in trust for the purpose of securing a debt
subject to a condition of defeasance.' "   The learned
judge in the same opinion ( 5 Ohio St. 130 ) makes the
distinction in this language :   " There is a manifest and
well-settled distinction between an unconditional deed
of trust and a mortgage or deed of trust in the nature of
a mortgage.   The former is an absolute and indefeasible
conveyance of the subject-matter thereof, for the pur-
pose expressed, whereas the latter is conditional and
defeasible."   Burrill, in his work on Assignments, sec-
tion 6, says :   " A mortgage resembles an assignment
more closely in the leading features of being a security
or provision for debt and involving a resulting trust to
the grantor on a certain contingency."   In connection

Hargadine v. Henderson.

with this latter point of resemblance, it may be said, whether the instrument be an assignment or a mortgage, if a surplus remains in the hands of the trustee after the purposes of the trust have been discharged, it will go to the grantor, in whose favor a resulting trust for such excess will be implied, even if it be not expressed in the conveyance, so that the reservation of such a right in the contingency of such an excess in this instrument will not enable us to distinguish it. The same author, in the same section, after thus pointing out the leading features of resemblance in the two instruments, thus distinguishes them : "An assignment is more than a security for the payment of debts, it is an absolute appropriation of property to their payment. It does not create a lien in favor of creditors upon property which in equity is still regarded as the assignor's, but it passes both the legal and equitable title to the property absolutely beyond the control of the assignor. There remains therefore no equity of redemption in the property, and the trust which results to the assignor in the unemployed balance does not indicate such an equity." And speaking of deeds of trust in the nature of a mortgage as distinguished from deeds of assignment, he says : "Such instruments are both in law and equity substantially the same as mortgages, and the radical distinction between them exists as in the case of mortgages, *in the equitable interest which the grantor still retains in the assigned property.*" Burrill on Assignments, sec. 8.

A careful examination of the authorities to which we have been cited by counsel in this case, and of many others, confirms the correctness of this radical distinction, and satisfies us that it furnishes the true test by which the nature of the instrument ought to be determined. The usual and ordinary mode by which this equitable interest or right of redemption is disclosed is by a clause of defeasance in the instrument of conveyance.

The one under consideration contains no such clause, and if such an express provision is essential to its character as a mortgage, then it cannot be so classified. But it cannot be so held in view of the familiar principle of equity that, although a deed may be absolute in form, yet if intended as a security merely for a debt or as an indemnity against contingent liability, it will be held to be a mortgage, and a right of seasonable redemption will be implied. " Whatever the form of the contract may be, if it is intended thereby to create a security, it is an equitable mortgage. It is not even necessary that the contract should be in express terms a security ; for equity will often imply this from the nature of the transactions between the parties." 1 Jones on Mort. sec. 162. " The mere fact that an instrument does not contain terms of defeasance cannot be at all decisive in determining the question whether it shall be considered a mortgage or not. If, from the nature of the instrument, either standing alone, or read in the light of the surrounding circumstances, it appears to have been given as a security, it must be considered as a mortgage, and the law will apply thereto the rules applicable to mortgages." *Cooper v. Brock*, 41 Mich. 488.

The assignment law of Missouri is not in letter or spirit a bankrupt or insolvent debtor's act. A debtor, whether solvent or insolvent, may, in good faith, sell, deliver in payment, mortgage or pledge the whole or any part of his property for the benefit of one or more of his creditors, to the exclusion of others, even though such transfer may have the effect of delaying them in the collection of their debts. Its terms in no way qualify the rule by which the character of this instrument is to be determined. Reading the instrument, then, as a whole, in the light of the circumstances under which it was executed, was it intended as a security, or as an absolute unconditional conveyance, *in praesenti*, to the grantee of all the grantor's interest in the property, both

legal and equitable, to the exclusion of any equitable right of redemption? So far as the intention of the parties appears by the recitals, the conveyance was intended to "secure debts and to protect and save harmless the grantor's sureties" against contingent liability on an obligation they had entered into with him; one of whom was the grantee in the deed of trust. If these were conclusive, in accordance with the principle to be deduced from the authorities heretofore cited, the instrument must be held a mortgage, although the indebtedness was a present one, the possession of the property delivered to the grantee, and no clause of defeasance appears in the instrument. For being intended merely as a security for the payment of a debt, and an indemnity to save harmless a surety, in equity it will be held to be a deed of trust in the nature of a mortgage, with the right of redemption in the mortgagor, if exercised before the property is applied to the purposes of the trust. To the same effect are the following to which many other authorities might be added: *Gage v. Cheesebro*, 49 Wis. 486; *Waterman v. Silverberg*, 67 Tex. 100; s. c. 2 S. W. Rep. 578; *Peck v. Merrill*, 26 Vt. 686; *Schradski v. Albright*, 93 Mo. 42.

By its recitals, the instrument purports to be a deed of trust in the nature of a mortgage, but its real character cannot be thereby concluded. That must finally be determined by the effect of the operation of its terms upon the property in its situation at the time of the execution of the deed. The property conveyed consisted of the grantor's stock of goods, his notes and accounts, one hundred and fifty-two shares of stock in the Hall Association, two shares of bank stock and ten shares of railroad stock. The stock of goods was encumbered by the chattel mortgage and the execution liens for the judgment debts set out in the deed. The shares of stock were all pledged to the bank as collateral for the debts due it, recited in the deed. The creditors secured by

the deed of trust had thus already tied up and secured for their debts all of the property conveyed by the deed except the notes and accounts, the value of which does not appear. A delivery bond had been executed by the grantee, with Harrison and Birch as his securities, in double the amount of the value of the goods. A tornado had recently partially destroyed the building of the association in which he kept his store and of whose stock his one hundred and fifty-two shares represented the controlling interest. He is in possession of his goods, but cannot dispose of them except at the hazard of his sureties. They must be forthcoming on the day of sale for their protection. Unless his situation is relieved, his goods must go to forced sale under the hammer, his shares of stock probably sacrificed by a like sale, by reason of the ruinous condition of the property of the association which it in part represents. The prospect is that his property will be sacrificed and the very debts for which sacrificed either not fully paid, or, if paid, that no such excess will be left over for him or his unsecured creditors as the real value of the property ought to produce. To avoid this, his goods must be sold, as near as the situation will permit, in the usual course of business, so that they may bring something like their real value. A loan must be raised for the purpose of restoring the building of the association, so that his shares of stock, when sold, may command something like their true value. To effect these objects is the plain purpose to be read upon the face of this instrument. To carry it out, it was necessary that his sureties on the delivery bond, one of whom was the grantee, should be indemnified, and that a fund should be raised as a basis for a loan to be applied to the expense of restoring the building, on the value of which depended the value of the shares of stock. The ultimate object, of course, was the payment of the debts by which the property was encumbered, and to secure as large an excess

for the grantor as possible.  If it were necessary to define this peculiar instrument, it might be called a deed of trust to indemnify sureties and to preserve the value of securities.  The day before it was executed the grantor could have relieved his sureties from liability, and released the property from the incumbrances upon it by paying the debts mentioned in the deed.  On any day thereafter, before the property was appropriated to the purposes of the trust, he could in like manner have redeemed the property from the operation of the deed. His interest in the property the day after the deed was executed, except in the notes and accounts, was greater in value than it was the day before, by as much as the value of the property disposed of in the manner provided for in the deed promised to be in excess of what it would have brought at a forced sale under less favorable conditions.  The right to have it thus disposed of was a valuable interest in the property, valuable to the grantor and his unsecured creditors.  For its protection equity gives him a right of redemption, though no clause of defeasance was inserted in the deed.  This interest a court of equity will protect, by holding, from the very nature of the transaction, that the instrument is not an absolute indefeasible assignment of all the grantor's title, both legal and equitable, in the property "in trust for his creditors," but a deed of trust to secure the payment of debts and other liabilities in which the grantor has an interest in the property conveyed, to be protected by the enforcement of its terms in the manner provided for in the instrument.

The circuit court in effect so held, by dismissing plaintiff's bill, and its judgment is affirmed.  All concur, except BARCLAY, J., not sitting.