CALIHAN *et al.* v. POWERS *et al.*, *Appellants.*

Division Two, March 17, 1896.

1. **Debtor and Creditor:** ASSIGNMENT: PREFERENCE. A debtor may, by the execution of chattel mortgages and an assignment of accounts given as security for, and in payment of, *bona fide* debts, prefer such creditors to his general creditors, and the fact that the execution of these instruments was immediately followed on the same day by a general assignment for the benefit of his other creditors, which the preferred creditors knew at the time the debtor intended to make, does not render the preferences invalid or make them a part of the assignment.

2. ——: ——: ——: CONFESSION OF JUDGMENT. A preference by confession of judgment within thirty days prior to an assignment is invalid and should be paid *pro rata* from the assets included in the assignment (R. S. 1889, sec. 424), such preference being the only one *dehors* the deed of assignment that is forbidden.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

REVERSED.

*A. L. Abbott* and *R. T. Stillwell* for appellant, Joseph Wichert.

(1) There is perhaps no principle of law better settled in this state than that a debtor, though in fail-

ing circumstances, may prefer one of his creditors over another and in so doing may secure such preferred creditor to the exclusion of all others, provided only that it be done *bona fide* and in good faith." *Waggoner, etc., Co. v. Ziegler, etc., Co.*, 128 Mo. 473; *Alberger v. Bank*, 123 Mo. 319, and cases cited. (2) A creditor may secure and retain a preference for his claim against a debtor over other creditors, although the debtor may at the time be in failing circumstances. *Waggoner, etc., Co. v. Ziegler, etc., Co.*, 128 Mo. 473; *La Grange Butter Co. v. Bank*, 122 Mo. 154. (3) There is absolutely no evidence in this case to show that the execution of the mortgages and deed of trust were one and the same transaction. *Waggoner, etc., Co., v. Ziegler, etc., Co.*, 128 Mo. 473. "The fact of knowledge of such intent would have, however, no bearing on the right to make the preference." *Alberger v. Bank*, 123 Mo. 325. (4) It is clear that Powers & Hervey, although in failing circumstances, while they remained in possession of and had dominion over their property, had the right, in the absence of fraud or statutory restrictions, to prefer some of their creditors to others, and to secure their claims by mortgage on their effects. And such a preference was not invalidated by reason of the general assignment of that firm, although made subsequently on the same day. *Waggoner, etc., Co. v. Ziegler, etc., Co.*, 128 Mo. 473; *Alberger v. Bank*, 123 Mo. 313; *Bank v. Bank*, 136 U. S. 223. (5) The fact that appellant Wichert took possession of the mortgaged property under his mortgage before it was recorded, can not affect his rights. *Waggoner, etc., Co. v. Ziegler, etc., Co.*, 128 Mo. 473. (6) In the present condition of the law in Missouri, a creditor has the right to secure, by superior diligence or persistency, and to retain, a preference for his claim against a debtor, provided always that the transaction is honest; that is to say, not a mere

cover to a purpose to hinder, delay, or defraud other creditors of the failing debtor. *Alberger v. Bank*, 123 Mo. 322.

*Chester H. Krum* for appellants, Sonnenfeld Millinery Company and Adolph Rosenthal.

(1) The judgment should be reversed because the' doctrine of *Larrabee v. Bank*, 114 Mo. 605, is not applicable to the circumstances surrounding the appellants. *First*. Rosenthal was not apprised of the intention of Powers & Hervey to ·make an assignment. He received accounts, in payment of his debt, but had no knowlege, or notice, that an assignment would follow. *Second*. The Sonnenfeld Millinery Company was virtually pledgee of the accounts, which were formally transferred on the first of August. The transfer really conveyed to the company what was already its own. *Third*. No such concert of action between the parties was shown as is necessary to make the conveyances parts of the same transaction. Wichert did not know that an assignment was contemplated. He did not know of the transfer of accounts to Rosenthal and the millinery company. The bank had no notice of any act, or contemplated act, by way of deed of assignment or otherwise. Neither Rosenthal nor the millinery company acted in conjunction with the other appellants. *Larrabee v. The Bank* can only apply to a situation alike in details to that shown in the record of that case. (2) *Larrabee v. The Bank*, does not reach a conclusion justified by the statutes of this state. *First*. It is necessarily conceded, by every one familiar with the decisions of this court, that a debtor who is insolvent may prefer one creditor to the exclusion of all other creditors. He may pay his debt in goods, in lands, in money, or in any species of property. The payment

made in good faith will be upheld as a valid preference. This proposition has come to be an axiom in this state. *Second.* To prefer being lawful, a preference should be regarded as a distinct act, even though it is practically cotemporaneous with a subsequent deed of assignment. Otherwise a payment in money, by way of preference, would be unlawful if made cotemporaneously with a deed of assignment. *Bank v. Bank,* 136 U. S. 230; *May v. Tenny,* 148 U. S. 69; *Sampson v. Shaw,* 19 Mo. App. 274; *Dodd v. Hills,* 21 Kan. 707; *Bailey v. Mfg. Co.,* 32 Kan. 73; *Meredith Co. v. Smith,* 8 N. H. 347; *Brown v. Foster,* 2 Metc. 152; *Wonnan v. Wolfesbarger,* 7 Harris (Pa.), 59; *Wilson v. Berg,* 88 Pa. St. 167, 172; *Gallagher's Appeal,* 7 Atl. Rep. 237; *Garretson v. Brown,* 26 N. J. L. 425; *Bates v. Coe,* 10 Conn. 293; *Sampson v. Arnold,* 19 Iowa, 486; *Jaffrey v. Mathews,* 120 Mo. 317. *Third.* The statute governing assignments and the legislation since its adoption afford a complete answer to the doctrine of the *Larrabee* case.

*T. K. Skinker* for appellant, St. Louis National Bank.

(1) The mortgage to the bank and the assignment to Meyer do not constitute one and the same transaction; the mortgage is distinct from, and superior to, the assignment, and passes title to the bank. R. S., section 424; *Waggoner–Gates Milling Co. v. Ziegler–Zaiss Commission Co.,* 31 S. W. Rep. 28; *Larrabee v. Bank,* 114 Mo. 592; *Alberger v. Bank,* 123 Mo. 313; *Sampson v. Shaw,* 19 Mo. App. 274; *Lake Shore Co. v. Fuller,* 110 Pa. St. 156. (2) Plaintiffs not having reduced their demands to judgment before this suit was brought are not entitled to maintain it. *Martin v. Michael,* 23 Mo. 56; *Merry v. Fremon,* 44 Mo. 518; *Mellier v. Bartlett,* 106 Mo. 381; *Scott v. Neely,*

140 U. S. 106; *Roan v. Winn*, 93 Mo. 512.   The assets
of a general partnership are not trust funds in any such
sense as to give a court of equity jurisdiction of a case
like this.   *Batchelder v. Altheimer*, 10 Mo. App. 181;
*Dunlevy v. Talmadge*, 32 N. Y. 461; *State v. Brockman*,
39 Mo. App. 136; *Case v. Beauregard*, 99 U. S. 125.
(3)  If plaintiffs' theory that the mortgage and the
assignment constitute one and the same  transaction is
correct, the remedy against the mortgages must come
through the assignee and not through these creditors;
the assignee alone can sue.  R. S., sec. 424.  It is only
the prior conveyance of his assignor he may not dis-
pute.  *Jacobi v. Jacobi*, 101 Mo. 512; *Harris v. Harris*,
25 Mo. App. 502; *Mark's Appeal*, 85 Pa. St. 231;
*Building Ass'n v. Willson*, 41 Md. 506; *Hard v. Foster*,
98 Mo. 297; *Spellman v. Freedman*, 130 N. Y. 421;
*Sweetzer v. Smith*, 22 Abb. N. C. 319; *Kessell v.
Drucker*, 23 Abb. N. C. 1; *Harvey v. McDonald*, 113
N. Y. 526; *Davies v. Fish*, 47 Hun, 314; *Sweetzer v.
Camp*, 63 Mich. 13.

*Henry E. Mills* and *Albert Arnstein* for respond-
ents.

(1)  The mortgage to the bank and Wichert, and
the  assignment of accounts, constitute one and the
same transaction and a fraudulent evasion of the pro-
visions of the assignment act.  *Larrabee v. Bank*, 114
Mo. 592; *Sexton v. Anderson*, 95 Mo. 373; *Winn v.
Investment Co.*, 125 Mo. 543.  (2)  To sustain a credit-
or's bill, creditors are not compelled to reduce their
demands to judgment where the assets are not vendible
on execution, and are only such assets as  are cogniza-
ble in a court of equity.  *Powers v. Hill*, 27 Mo. App.
192; *Shockley v. Fisher*, 75 Mo. 502; *Batchelder v. Al-
theimer*, 10 Mo. App. 184; *Woolen Co. v. Kampe*, 38

Mo. App. 229; *Russell v. Cranch*, 7 Cranch, 89; *White v. Land Co.*, 49 Mo. App. 465; *Hard v. Foster*, 98 Mo. 297; *Sexton v. Anderson*, 95 Mo. 373; *Winn v. Invest. Co.*, 125 Mo. 543; *Beal v. McVicker*, 3 Mo. App. 592; *Nieters v. Brockman*, 11 Mo. App. 600; *Ault v. Eller*, 38 Mo. App. 609; *St. Louis v. Lumber Co.*, 114 Mo. 74; 42 Mo. App. 586; *Ricker v. Ricker*, 79 Mo. 352. (3) The assignee can not sue to recover any assets, except such as are described in a deed and subject to the conditions of the deed of assignment. Creditors alone can have contemporaneous instruments decreed to be parts of the same transaction. (4) The ratification of the action of Jonas by the bank adopts the transaction, including the knowledge of Mr. Jonas of the entire transaction. *Turner v. Railroad*, 51 Mo. 501; *Clydesdale Horse Co. v. Bennett*, 52 Mo. App. 337; *Ferris v. Thaw*, 72 Mo. 446. (5) The allowance of the claims in favor of the appellants, before they had received any money from proceeds of the sale, made them general creditors of the estate, and was an abandonment of their preferences. *Roan v. Winn*, 93 Mo. 503; *Eppright v. Kauffman*, 90 Mo. 25; *Jewett v. Priest*, 34 Mo. App. 512; *Kendrick v. Mfg. Co.*, 60 Mo. App. 22.

GANTT, P. J.—This is a bill in equity by Calihan and Cooper, Woodman and Howes, Eddy and Webster, Fancher & Company, and the Gardiner and Estes Company against Powers & Hervey and certain creditors of said firm, to set aside and avoid certain chattel mortgages and assignments of accounts executed by said firm of Powers & Hervey, preferring the mortgagees in said chattel mortgages and the assignees of said accounts, and to decree the chattels so mortgaged and said assigned accounts to be a part and parcel of the assigned estate of said Powers & Hervey, and sub-

ject to a *pro rata* distribution among all the creditors of said firm. The suit was returnable to the October term, 1893, of the St. Louis circuit court.

The petition, after stating the indebtedness of Powers & Hervey to each of the plaintiffs, proceeds to aver "that on the second day of August, 1893, and prior thereto, said defendants, Powers & Hervey, had become financially embarrassed and unable to meet their obligations as they matured from time to time, and were then and there utterly insolvent. That being so insolvent said defendants, Powers & Hervey, then and there finding it impossible for them to further continue their business and meet their obligations as they matured, determined to wind up and discontinue their business, and to make a general assignment of their property and assets for the benefit of their creditors in such a way as to give preference to certain confidential creditors, so that their assets and estate should not be equally divided among their creditors *pro rata*.

"That in pursuance of said determination and scheme on their part, to evade the provisions of the statute concerning the equal distribution of their assets *pro rata* amongst their creditors, they caused instruments of writing to be made and executed of the following tenor and effect, to wit:

"A chattel mortgage to appellant, Joseph Wichert, dated and acknowledged August 2, 1893, which conveyed to him all of the boots and shoes, slippers and footwear situated in the storeroom of the mortgagors at Broadway and St. Charles streets, in the city of St. Louis; a chattel mortgage to appellant, the St. Louis National Bank, dated and acknowledged the same day, August 2, 1893, which conveyed to said bank the aforesaid stock of goods, subject to the mortgage to Wichert, and also the fixtures contained in the store.

"That on the said day, to wit, on the second day of August, 1893, defendants Powers & Hervey, for the purpose of evading the provisions of the statute concerning the equal distribution of their assets among their creditors, assigned, by an instrument in writing, which plaintiffs can not definitely describe, to the defendants, Sonnenfeld Millinery Company and Adolph Rosenthal, president of said company, almost the entire amount of their then outstanding accounts, being about the sum of $7,000; that said accounts included the good and choice and collectible accounts, and that there were left over and above the accounts so assigned the nominal amount of $625.75, which plaintiffs charge to be doubtful and of little value; that the assignment of said accounts to said Sonnenfeld Millinery Company and Adolph Rosenthal, its president, was with full knowledge on the part of said company and said Rosenthal of the intent of said Powers & Hervey to dispose of all their assets in fraud of the laws of the state of Missouri relating to general assignments; that it was agreed and determined between all of the defendants, before any of said conveyances, that the scheme should include and call for a deed of assignment to Joseph W. Meyer" (also a defendant), "who is an employee and stockholder in the Sonnenfeld Millinery Company, but that these unlawful preferences should include all of the available assets of said Powers & Hervey."

The petition alleges further that Powers & Hervey made a deed of assignment to Meyer for the benefit of their creditors, August 2, 1893, and conveyed the stock of goods and fixtures, subject to the mortgages of Wichert and the bank, and book accounts amounting to $625.76; that the mortgages and the deed of assignment were recorded as follows: To Wichert at 8:40 A. M., to the bank at 8:41 A. M., to

Meyer at 8:43 A. M.; that "said Wichert and the St. Louis National Bank, named as beneficiaries in the above mortgages, and Sonnenfeld Millinery Company and Adolph Rosenthal, assignees of said accounts, at and prior to the date of receiving the same and securing the preferences therein given out of the estate of defendants Powers & Hervey, contemplated making such a deed of assignment so made and executed by them, and that the plain purpose and scheme of said defendants Powers & Hervey was to give preferences to the beneficiaries and grantees named in said mortgages and to the assignees of said accounts over their other creditors, and to avoid and evade the effect of the statutes of the state of Missouri, concerning voluntary assignments by making said mortgages and assignments of accounts to and for the benefit of the persons securing preferences thereby, and that the execution of said mortgages, assignment of accounts, and deed of assignment was a part and parcel of the scheme hereinbefore set forth, concocted and set forth on the part of defendants Powers & Hervey by and with the concurrence and connivance of the other defendants herein for the purpose of giving to said defendants, so secured by said mortgages and the assignment of accounts, an unjust and undue preference over the remaining creditors of the defendants, Powers & Hervey, and of appropriating the bulk of their assets to the payment of said preferred creditor, and of defrauding the other creditors of said defendants Powers & Hervey of their rights in said assets, and of preventing the said assets from going into the hands of said Meyer, as assignee for the body of the creditors of Powers & Hervey, under the deed of assignment, which they then and there contemplated should be made after said preference had been given, and that said preferred creditors actively and knowingly assisted

in the accomplishment of said purpose and intent of giving said preferences as above set forth and stated.''

The petition prays to have the mortgages and assignments of accounts set aside, and the property sought to be thereby conveyed to be carried into the general estate under the deed of assignment for the benefit of all of the creditors.

The answer of the Sonnenfield Millinery Company and of Adolph Rosenthal is a general denial. The bank answered that it sought and took its mortgage to secure a valid and *bona fide* debt and for no other purpose, and Wichert's answer is to the same effect.

At the trial the respondents read in evidence an assignment of accounts to the appellant, the Sonnenfield Millinery Company, to satisfy a claim due from Powers & Hervey in the sum of $2,981.33. The evidence was that the face value of the accounts thus transferred was $3,000. The transfer was made on the first day of August, 1893. The respondents also read in evidence an assignment of accounts to the appellant Adolph Rosenthal, to satisfy a claim due from Powers & Hervey in the sum of $500. The face value of these accounts was proven to be $517.68. This transfer was made August 1, 1893.

By the deposition of William S. Hervey, read as an admission, the respondents proved that the firm of Powers & Hervey owed Wichert about $6,000. Wichert asked the firm to make him a mortgage several days before August 2, the date of the assignment. It was agreed on August 1 that the firm was to make a mortgage to Wichert to cover his claim, and one to the St. Louis National Bank to cover its debt.

By the deposition of Adolph Rosenthal, read as an admission, the respondents proved that he did not know that Powers & Hervey intended to give mortgages to Wichert and to the St. Louis National Bank.

The assignment of accounts to Rosenthal and to the Sonnenfeld Millinery Company took place on the first day of August.

By the evidence of Adolph Rosenthal, called as a witness by respondents, it was proven that the accounts of Powers & Hervey were kept on the books of the Sonnenfeld Millinery Company, were rendered to customers in the name of the millinery company, and were collected by the last named company. The millinery company had advanced moneys from time to time to Powers & Hervey, the latter stating as moneys were advanced, "you are secured by our accounts."

It was proven that the St. Louis National Bank was not aware of the execution of the mortgage in its behalf until after the deed had been executed and recorded on August 2, 1893. It was given to secure an indebtedness of $2,159 and was so given subject to the mortgage given to Wichert.

It was proven that neither Wichert nor the bank was informed prior to August 2, 1893, of the purpose of Powers & Hervey to make a deed of general assignment. There was no previous understanding shown between the parties that such a deed would be made.

The mortgage to Wichert was executed August 2, and was recorded on the same day at 8:40 A. M.; the mortgage to the bank was executed on the same day and recorded at 8:41 A. M.; the deed of assignment was executed on the same day and recorded at 8:43 A. M. The parties to these instruments gave no instructions as to the order in which they were to be recorded.

It was in evidence that the firm had been pressed for money for a week. Wichert was their principal creditor. He had come out from Brooklyn and had offered them a loan of $10,000 on two hundred shares of bank stock. The firm promised him his mortgage the day before it was finally executed. It was ready

for execution on August 1 but Mr. Hervey could not be found that afternoon. Wichert testified that the firm were apparently doing a good business and he offered to loan them $10,000. Hervey offered him two hundred shares of St. Louis National Bank stock as security and he agreed to take it but Hervey did not produce the stock. This negotiation fell through about 1 or 2 o'clock of August 1. Thereupon Powers said "We will secure you," and thereupon he employed Mr. Abbott to draw up the papers and they were prepared that night, but Hervey not being present their execution was deferred till the next morning. During his negotiations he said he heard nothing about an assignment. He was present next morning and saw the papers executed to the other creditors but says he was not aware that any but his own were to be executed up to that time, and so stated to Powers at the time. Mr. Abbott took his mortgage when executed and had it recorded. No instructions were given as to the order of recording, in his hearing.

Mr. Abbott fully corroborated Mr. Wichert as to the absence of all previous appointments with Mr. Jonas, or Meyer, as to the execution of the other instruments. He knew of no other paper to be executed that morning but the Wichert mortgage. He and Wichert immediately took charge of the store, and then went alone to the recorder's office. Left Mr. Jonas at the store. Took acknowledgments of all three instruments but *was finishing up the acknowledgment* to his own, when Jonas asked him to take the acknowledgment to the bank's mortgage, and the assignment. Powers testifies he did not tell Wichert he was going to give the bank a mortgage or make an assignment and the bank had no intimation in advance that he intended an assignment. Mr. Nelson, president of the bank, testified that he had not the slightest knowledge of the

intention of Powers & Hervey to make an assignment. The list of accounts assigned to Rosenthal and Sonnenfeld Millinery Company was made and completed the night before. The claims of the preferred creditors were *conditionally allowed* by the assignee.

There is no question of the *bona fides* of a dollar of the preferred debts.

The accounts assigned to Sonnenfeld Company and Rosenthal were just sufficient if entirely solvent to secure the firm's indebtedness to them.

The stock of goods was sold by the assignee and mortgagees jointly and realized $17,000, some $8,500 over and above the mortgage debts. There were also $650 of accounts unassigned, out of which the assignee had realized about $400 at the time of the trial.

Upon this state of facts the circuit court set aside the mortgages and assignments of the accounts, and decreed that the assignee should take all of said mortgaged goods, or their proceeds, and said assigned accounts, and account for them as a part of said assigned estate. From this decree, Joseph Wichert, Sonnenfeld Millinery Company, Adolph Rosenthal, and the St. Louis National Bank have each appealed.

I. The circuit court held that the assignment of the accounts to Rosenthal and the Sonnenfeld Millinery Company on August 1, 1893, and the chattel mortgage to Wichert and the St. Louis National Bank executed on the morning of August 2, were *contemporaneous with*, and constituted but a part of, the general assignment which followed on the morning of August 2, and that the preferences attempted in favor of said mortgagees and assignees were void because in contravention of our statute governing voluntary assignments.

As that law is again *here* for construction it is well enough to keep before us pending this discus-

sion. Section 424, Revised Statutes, 1889, provides: "Every voluntary assignment of lands, tenements, goods, chattels, effects, and credits, made by a debtor to any person in trust for his creditors, shall be for the benefit of *all* the creditors of the assignor in proportion to their respective claims; *and every provision in any assignment* providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities (including judgments entered by confession thirty days previous to such assignment) shall be paid *pro rata* from the assets *thereof;* and every such assignment shall be proved or acknowledged, and certified and recorded in the same manner as is prescribed by law in cases wherein real estate is conveyed."

Prior to the enactment of any statute on the subject of voluntary assignments for the benefit of creditors it was the settled law of this state that it was neither illegal nor immoral for a debtor in failing circumstances to prefer one of his creditors to another. This was the doctrine not only in the courts of law but in chancery as well. *Bell v. Thompson*, 3 Mo. 84; *Sibly v. Hood*, 3 Mo. 290; *Murray v. Cason*, 15 Mo. 379; *Richards v. Levin*, 16 Mo. 596.

The first enactment by the legislature on this subject was passed February 15, 1841. Sess. Acts, 1840–1841, sec. 1, p. 13. This act simply provided that in all cases in which any person should make a voluntary assignment of his lands, tenements, goods and chattels, effects and credits, or any part thereof in trust for his creditors or any of them, it should be the duty of the assignee to file an inventory within thirty days after the execution of the deed in the office of the circuit clerk of the county in which the assignor resided. Preferences were not only not prohibited by this act but by its terms expressly sanctioned.

Thus the right of preference remained as at common law until the act of December 7,1855 (R. S. 1855, p. 210, sec. 39), which provided that, "every provision in any assignment, hereafter made in this state, providing for the payment of one debt or liability in preference to another, shall be. void; and all debts and liabilities, within the provisions of the assignment, shall be paid *pro rata* from the assets thereof."

At the January term, 1858, this section 39 came before this court for construction in *Shapleigh v. Baird*, 26 Mo. 322, and it was held that inasmuch as it stood in the same chapter with section 1 of the act of 1841, above quoted, and as that act *ex vi termini* permitted partial assignments, the two sections must be reconciled and consequently it was ruled that this new section only prohibited preferences among those who were preferred by the assignment but did not prevent a debtor from making an assignment in favor of certain creditors to the exclusion of all others.    *Woods v. Timmerman's Assignee*, 27 Mo. 107; *State to use v. Benoist*, 37 Mo. 501.

With this construction the statute law remained until the revision of 1865, when we find this provision: "Every voluntary assignment of lands, tenements, goods, chattels, effects, and credits, made by a debtor to any person, in trust for his creditors, shall be for the benefit of all the creditors of the assignor, in proportion to their respective claims; and every such assignment shall be proved or acknowledged, and certified and recorded in the same manner as is prescribed by law in cases wherein real estate is conveyed." G. S. 1865, page 452, sec. 1.

This statute as thus amended in due time was brought up for construction in the case of *Crow v. Beardsley*, 68 Mo. 437.    In that case Crow sued Beardsley for goods sold and delivered to him and obtained

an attachment in aid thereof. Under the attachment Beardsley's stock of dry goods was levied upon, whereupon Kennan interpleaded and claimed the goods under a deed of trust executed by Beardsley to him in consideration of $1 paid and the debt and trust therein mentioned. The deed of trust named a number of beneficiaries and the debts due them, none of which were due, and provided that if the said debts were paid at their maturity the deed should be void, otherwise in full force. The only peculiarity about the deed was that it placed the goods in the possession of a third party until default in payment. Crow was not secured by the deed of trust. The plaintiff assumed and argued that the deed of trust amounted to an assignment and as it preferred the creditors named in it to the exclusion of those not named, it was void as to plaintiff, but this court held that there was nothing in the assignment law of 1865 just quoted which rendered an assignment preferring certain creditors void, but that the only effect of such an *assignment* would be that it would inure to the benefit of all creditors—as well those not named as those secured in the deed; and the court went further and held that by the word "assignment" in the statute was meant an absolute appropriation of property to the payment of a debt or obligation, not a mere security therefor, like a mortgage, or deed of trust, subject to a condition of defeasance, and pointed out that there was an obvious distinction between the character of an assignment, and a deed of trust, or mortgage, and that there was nothing in the assignment law which prohibited a debtor from preferring his creditor by a deed of trust, or other device short of an assignment, provided, always, the conveyance was not made with the intent to hinder, delay, or defraud the other creditors and the secured creditor did not actually participate in such fraud but took the

same for the sole purpose of saving or securing a *bona fide* debt. *Shelley v. Boothe*, 73 Mo. 74; *Albert v. Besel*, 88 Mo. 150; *Sexton v. Anderson*, 95 Mo. 373; *State to use v. Mason*, 112 Mo. 374; *Holmes v. Braidwood*, 82 Mo. 610; *Sampson v. Shaw*, 19 Mo. App. 274.

The distinction drawn in *Crow v. Beardsley*, 68 Mo. 437, between an assignment and a mortgage or deed of trust given to secure a debt upon a defeasance has never been overruled but has been uniformly accepted by the courts and profession in this state, and preferences in various ways have been effectuated in the light of that adjudication.

In *Hargadine v. Henderson*, 97 Mo. 375, the ruling therein made was confirmed, and it was again reasserted in *Jaffrey v. Mathews*, 120 Mo. 317, in both of which it was held that an insolvent debtor can mortgage or pledge all or any part of his property for the benefit of one or more of his creditors, and his privilege in this respect is not abridged by section 198, Revised Statutes, 1889, relating to voluntary assignments. *Western Mfg. Co. v. Woodson*, 130 Mo. 119.

In *Bank v. Bank*, 136 U. S. 223, it was said by the supreme court of the United States that "the decision in *Crow v. Beardsley* has always been treated in all the courts of the state as settling the law of Missouri upon the subject;" that this decision and those following it established a rule of property and are controlling authority in the federal courts within the state of Missouri.

In *Bank v. Bank*, *supra*, the supreme court of the United States disapproved the doctrine announced by Judge KREKEL in *Martin v. Hausman*, 14 Fed. Rep. 160, and a long line of cases which followed it, to the effect that a debtor in Missouri in failing circumstances might prefer one or more of his creditors by securing

them but he could not do it by conveying the whole of his property to pay one or more creditors; that such an instrument whatever its form would be held an assignment. See, also, *May v. Tenney*, 148 U. S. 60. So that there is no longer one rule of decision in the federal courts of Missouri and another in her state courts.

And that this right of preference applies as well to a corporation as to an individual is abundantly established by many recent cases in this court, in which it has been ruled that a corporation in failing circumstances may prefer one creditor to another in discharging its obligations if such preference is made in good faith while the property of the corporation remains in its possession unaffected by liens or any process of law; that mere insolvency of a corporation does not of itself transform its assets into a trust fund for the equal benefit of all its creditors. *Alberger v. Bank*, 123 Mo. 313, 27 S. W. Rep. 657; *Slavens v. Cook Drug Co.*, 128 Mo. 341; *Waggoner–Gates Milling Co. v. Ziegler–Zaiss Commission Co.*, 128 Mo. 473; *Schufeldt v. Smith*, 131 Mo. 281; *St. Louis v. Alexander*, 23 Mo. 524; *Foster v. Planing Mill Co.*, 92 Mo. 87; *La Grange, etc., Co. v. Bank*, 122 Mo. 154.

Counsel for respondent rely upon *Larrabee v. Bank*, 114 Mo. 592, to sustain the proposition that the mortgages to the bank, and Wichert, and the assignments of the accounts, constitute one and the same transaction and a fraudulent evasion of the assignment law. Judge BURGESS, who wrote the *Larrabee-Bank* case, also delivered the opinion of the court in *Waggoner–Gates Milling Company v. Ziegler–Zaiss Commission Company*, 128 Mo. 473, in which he expressly held, with the concurrence of all of this division, that the right of an individual or corporation in failing circumstances to prefer one of his or its creditors to the exclusion of

all others is the settled law of this state, and the *fact he or it may intend at the time* to, and does immediately thereafter, make a *general assignment can make no possible difference.* There is nothing in the *Larrabee* case that was meant to question or weaken the authority of *Crow v. Beardsley* or *Hargadine v. Henderson, supra.* The cases of *Preston v. Spaulding,* 120 Ill. 208, and *White v. Cotzhausen,* 129 U. S. 329, and certain federal decisions were referred to as holding views contrary to our own decisions, but *not to approve them.* On the contrary, he pointed out that notwithstanding the supreme court of Illinois had so construed the statute of that state differently from the construction placed upon our own statute by this court, our own decisions construing our own laws must control. *Larrabee v. Bank* was decided upon its own peculiar and exceptional features, and is not to be followed as establishing a different doctrine from the long line of decisions in this state in which the right of preference is firmly upheld.

A preference other than a confession of judgment within thirty days prior to the execution of the assignment can not be a part of the deed of assignment unless it is so provided in the deed. Separate instruments, as in this case, executed by the debtor to secure separate *bona fide* debts, though contemporaneous, and though the debtor intends to make a general assignment, do not constitute parts of one assignment; neither does a payment in goods followed by an assignment form a part of it. The intention of the debtor to subsequently make an assignment, or the knowledge of the creditor that he so intends, will not vitiate or destroy a preference given to secure a *bona fide* debt. A preference by confession of judgment within thirty days prior to a general assignment is forbidden but it is the only preference *dehors* the deed of

State ex rel. v. Withrow.

assignment, that is forbidden.   The specification of this one, in the light of our decisions, must be held to exclude all others from the prohibition of the statute.

We hold that Powers & Hervey had a perfect right to secure Wichert in the amount they owed him. He is not to be affected by the fact that they had, without his knowledge, also assigned a part of their accounts to Rosenthal and the Sonnenfeld company.   Those debts were justly due and there was no element of fraud in the transactions.   They were careful only to take barely the amount of what was due them.   The same may be said of the bank.   It was secured only to the amount it loaned the firm.  The law did not compel the firm to assign after they had made these preferences, but in so doing the assignment did not relate back and nullify their lawful transactions.   It evinced a desire to turn over the remaining $8,000 or $9,000 worth of goods to their other creditors without litigation.   In so doing they merely exercised a right both at common law and under our statute.

It becomes unnecessary to discuss other questions, as the decision of this point requires a reversal of the judgment.   As all the facts are in the record we reverse the judgment of the circuit court and direct. judgments here in favor of each of the appellants. SHERWOOD and BURGESS, JJ., concur.