STOCKTON, Appellant, v. TEASDALE and TEAS-
DALE, Respondents.

**St. Louis Court of Appeals, December 12, 1905.**

**MORTGAGES AND DEEDS OF TRUST: Limitations.** Section 4277,
Revised Statutes 1899, enacted February 18, 1891, providing a
limitation for actions to foreclose mortgages then existing, ap-
plies only to mortgages which secure obligations barred by the
statute of limitations at the time the act was passed.

Appeal from St. Louis City Circuit Court.—*Hon. Moses
N. Sale,* Judge.

REVERSED AND REMANDED AND CERTIFIED TO THE SUPREME
COURT.

*Kehr & Tittmann* for appellant.

The notes and deed of trust in controversy were
dated October 19, 1887. The principal note matured Oc-
tober 19, 1888. An action on the note itself was not
barred by limitation until October 19, 1898. The Act of
February 18, 1891 (Laws of Missouri, 1891, p. 184, now
sections 4276 and 4277, R. S. 1899), does not apply to
this case, because the notes secured by the deed of trust
were not barred by limitation prior to the passage of that
act nor did they become barred at any time during two
years after its passage. Stanton v. Gibbins, 103 Mo.
App. l. c. 267, 77 S. W. 95; Little v. Reid, 75 Mo. App. l.
c. 270; Kreyling v. O'Reilly, 97 Mo. App. l. c. 388, 71 S.
W. 372; Cowan v. Mueller, 176 Mo. l. c. 198 and 199. Ir-
respective of the Act of 1891, it is well settled in this
State that although a note or bond secured by mortgage
or deed of trust may be barred so that no action can be
maintained thereon, yet the deed of trust or mortgage
may be enforced against the land by trustee's sale or
foreclosure. Cape Girardeau v. Harbison, 58 Mo. 90;

Long v. Long, 141 Mo. 1. c. 368, 44 S. W. 341; Lewis v. Schwenn, 93 Mo. 26, 2 S. W. 391; Booker v. Armstrong, 93 Mo. 49, 4 S. W. 727; Gardner v. Terry, 99 Mo. 523, 12 S. W. 888; Benton Co. v. Czarlinsky, 101 Mo. 279, 14 S. W. 114; Orr v. Rode, 101 Mo. 387, 13 S. W. 1066; Combs v. Goldsworth, 109 Mo. 151, 18 S. W. 1130; Chouteau v. Riddle, 110 Mo. 366, 19 S. W. 814; Tucker v. Wells, 111 Mo. 399, 20 S. W. 114.

*Johnson, Houts, Marlatt & Hawes* for respondent.

The notes having been barred on and after October 19, 1898, the deed of trust was also barred after that date. Secs. 4276-4277, R. S. 1899; Cowen v. Mueller, 176 Mo. 1. c. 198-199, 75 S. W. 606; Stanton v. Gibbins, 103 Mo. App. 264, 77 S. W. 95. In construing the Act of February 18, 1891 (now sections 4276-4277), it should be so construed as to effectuate the obvious intention of the Legislature in enacting it. Stubbs v. Mulholland, 168 Mo. 1. c. 73, 67 S. W. 650; State ex inf. v. Talty, 166 Mo. 1. c. 559, 66 S. W. 361; State v. Bixman, 162 Mo. 1. c. 34, 62 S. W. 828.

STATEMENT.—The controversy is between Meredith Stockton, executor of the estate of Elizabeth Martin, and Hattie Teasdale (*nee* Martin) and her husband, Wann Teasdale, and arose in an action for partition of certain real estate situated on Fourth and Walnut streets, in the city of St. Louis, brought by Meredith Martin, Jr., et al., and Meredith Stockton, as executor, against Hattie Teasdale and her husband. The plaintiffs, except Stockton, and defendant, Hattie Teasdale, in the partition suit, are owners in fee as tenants in common of the lot sought to be partitioned. John G. Martin, who was a common source of their title, on the nineteenth day of October, 1887, then owning a one-fifth interest in said lot, conveyed his one-fifth interest to Luther Babcock, trustee, in trust, to secure to Marshall C. Thorpe his (Martin's) three negotiable promissory

notes of even date with the trust deed; one principal note for two thousand dollars, due one year after date, and two semiannual interest notes of seventy dollars each, payable, respectively, in six and twelve months after date, all bearing interest from maturity at the rate of seven per cent per annum. Afterwards Marshall Thorpe, for value, by indorsement transferred and delivered the notes and the deed of trust to Elizabeth L. Martin, who was the owner and holder thereof at her death. Neither of the notes or the interest thereon were ever paid nor were they ever presented for allowance or classification against the estate of John G. Martin, the administration of which estate has long since been closed. The notes are now held by Meredith Stockton, as executor of the last will of Elizabeth Martin, and the petition in the partition suit alleged that the interest of Hattie Teasdale in the lands sought to be partitioned is subject to the said deed of trust, and prayed the court to determine and declare the rights, title and interest of all the parties to the suit. The answer of Hattie Teasdale and her husband admitted that Hattie Teasdale was the owner of an undivided one-fourth interest in the real estate sought to be partitioned, denied every other allegation and pleaded specially the statute of limitations against the claim of Meredith Stockton, as executor of the last will of Elizabeth Martin, and denied that her interest in the lot was subject to the deed of trust of October 19, 1887.

The partition suit was tried before Judge Blevins, of the St. Louis Circuit Court, who, by an interlocutory decree, found and declared the interest of the several parties to the suit in and to the lands, found that the lands could not be partitioned in kind and ordered a sale, and also found that the deed of trust of October 19, 1887, was a lien in favor of Stockton, as executor, upon nineteen-twentieths of the undivided one-fourth interest of defendant Hattie Teasdale. Timely motions for new trial and in arrest were filed and overruled. Subsequently, to-wit, on December 20, 1904, a renewed order

of sale was made under which the commissioner made a sale of the property which was approved February, 1905, and a final order of distribution was made in which the sum of $3,776.34 was ordered to be paid to Stockton out of the distributive share of Hattie Teasdale. A timely motion for new trial was again filed, the substantial ground alleged being that the notes and deed of trust held by Stockton, as executor, were barred by the statute of limitations. Before this motion was passed upon, Judge Blevins was succeeded by Judge Sale. Judge Sale sustained the motion and modified the interlocutory decree and order of distribution, in so far as they affected the title of Hattie Teasdale, by setting aside that portion of the decree and order of distribution which declared that the deed of trust of October 19, 1887, was a valid lien on any of her interest in the lands, and finding that the statute of limitations had long since run against said notes and deed of trust. Exceptions to the ruling were saved and a timely motion for new trial filed by Stockton which the court overruled, whereupon Stockton, as executor of Elizabeth Martin, appealed to this court.

BLAND, P. J., (after stating the facts).—Prior to 1891, we had this unscientific and incongruous state of the law in respect to the limitation of actions on money obligations and actions to foreclose mortgages given to secure such obligations. By statute, the right to sue on the obligation was barred in ten years from the date of its maturity, while the right of action to foreclose the mortgage was not barred until twenty years after the maturity of the obligation it was given to secure, unless the mortgagor or his assigns, after the maturity of the debt, had for ten years held possession of the mortgaged premises, adversely to the mortgagee. [Eyermann v. Piron, 151 Mo. 1. c. 116-117, 52 S. W.229, and cases cited.] For the purpose of expunging this incongruity from the law of limitations, the Legislature, in 1891, passed the following act, approved February 18, 1891 (Laws of

1891, p. 184, now sections 4276 and 4277, R. S. 1899), which reads as follows:

"Sec. 1. No suit, action or proceeding under power of sale to foreclose any mortgage or deed of trust, executed hereafter to secure any obligation to pay money or property, shall be had or maintained after such obligation has been barred by the statutes of limitations of this state.

"Sec. 2. Nor shall any suit be had or maintained to foreclose any such mortgage or deed of trust heretofore executed to secure any such obligation after the expiration of two years after the passage of this act."

The principal note secured by the Martin deed of trust, October 19, 1887, matured October 19, 1888, and an action on it was not barred by limitations until October 19, 1898. For this reason, appellant contends that the Act of 1891 does not apply to the deed of trust. His contention is that the second section of the act (sec. 4277, R. S. 1899) applies only to mortgages where the right of action on the obligation they were given to secure was barred by the statute of limitations before or at the date of the passage of the act. To the contrary, the respondents contend that the section applies to all mortgages in force at the date of the passage of the act, that two years of grace were given in which to begin foreclosure proceedings on any existing mortgage, if the obligation secured thereby was barred at the date of the passage of the act or if it should be barred at any time in the future by limitation.

The section has been twice construed by the Kansas City Court of Appeals by Judge Smith, in Little v. Reid, 75 Mo. App. l. c. 270, and by Judge Ellison, in Stanton v. Gibbons, 103 Mo. App. 266-267, 77 S. W. 95. In Little v. Reid, the second section of the statute was not before the court for construction. In Stanton v. Gibbons, the note secured by the mortgage matured April 2, 1885. Suit to foreclose the mortgage was begun July 31, 1902, more than seventeen years after the maturity of the note

and more than two years after the passage of the Act of
1891. Judge ELLISON held that the mortgage came un-
der the provisions of section 4277, and that the note be-
ing barred and more than two years having elapsed since
the statute took effect, the suit on the mortgage was also
barred. At page 267, the learned judge said:

"The object of the statute was to provide that the
life of mortgages and deeds of trust thereafter executed
should continue as long as the life of the note lasted,
but no longer. And that mortgages and deeds of trust
executed before the statute, should end within two years
after the passage of the act unless, of course, the obliga-
tion secured was not yet barred. The statute does not,
under either section, end the life of the mortgage or deed
of trust at any time before the obligation secured is bar-
red. But in cases where the mortgage was executed
prior to the act it would be barred in two years, if at any
time before the two years had run the obligation had be-
come barred."

Literally construed, the last clause of the quotation
from Judge ELLISON'S opinion would confine the appli-
cation of the statute to mortgages securing obligations
barred at the date of the passage of the Act of 1891, and
those where the debts secured would become barred with-
in two years from the date of the approval of the act.
The facts in judgment, however, show that he did not in-
tend to be so understood, for the note secured by the
mortgage it was attempted to foreclose did not become
barred until April 2, 1895, more than two years after the
passage of the act, yet he held the suit to foreclose the
mortgage was barred for the reason the debt was barred
and the foreclosure suit was begun more than two years
after the approval of the act. The case therefore seems
to be authority in support of respondents' contention.

In Kreyling v. O'Reilly, 97 Mo. 384, this court held
the act applicable to a mortgage where the obligation the
mortgage was given to secure was barred before the pas-

sage of the act. The facts in the case did not call for a further interpretation of the act.

If the second section of the act only applies to mortgages given to secure obligations then barred, then the holder of a mortgage securing an obligation barred on the seventeenth of February, 1891, would have but two years after February eighteenth of that year in which to bring suit to foreclose his mortgage, while the holder of a mortgage securing an obligation that would be barred two days later would have twenty years in which to bring his suit to foreclose. If the act applies to both mortgages where the obligations they secure were barred at the date of the passage of the act or that would become barred within two years thereafter, then the holder of a mortgage securing an obligation barred at the date of the passage of the act would have two years in which to sue for foreclosure, while the holder of a mortgage securing an obligation which became barred on February 17, 1893, would have but one day after the obligation was barred to commence his suit for foreclosure. If the act applies to all mortgages executed before the passage of the act, then two years of grace is given in every case in which to bring suit for foreclosure after the obligation is barred, irrespective of the date when it was or became barred. But to arrive at this result, terms must be read into the section that it does not contain. To do this is not permissible. The intent of the Legislature must be interpreted by the terms it used to express its purpose, having in mind the evil sought to be cured and the remedy provided. The first section of the act needs no interpretation. It unmistakably applies to all mortgages to be thereafter executed, and provides for the same period of limitation to mortgages as applies to the obligations they are given to secure. The second section could not apply this rule to existing mortgages where the obligations they were given to secure were already barred without infringing on that section of the Constitution which prohibits the Legislature from passing any law

impairing the obligation of contracts. To avoid the impairment of the obligation of contracts, the Legislature, by the second section of the act, granted what it deemed a reasonable time in which suits for foreclosure on such mortgages might be begun. The limit is two years after the passage of the act. No mention is made of mortgages securing debts matured or to become matured, and the act in unqualified terms limits the time to two years in which to commence suits for foreclosure on all existing mortgages. A, literal construction of the section would bar suits to foreclosure mortgages where the obligations they were given to secure matured more than two years after the passage of the act. Of course, no such result could be brought about by a legislative act and no such result was intended, and the act does not and cannot apply to such mortgages, nor do we think that it applies to mortgages securing obligations not barred, but which would be barred within two years after the passage of the act, for the reason, as we have herein pointed out, unequal periods of limitation would apply to mortgages securing obligations already barred and to those securing obligations to be barred in two years. The two years granted by the statute in which to bring suits for foreclosure is a limitation on the right to sue and suits brought after the lapse of time fixed cannot be maintained. This is a plain and positive provision of the legislative act and it cannot be construed in any other way. To what mortgages then does it apply? What was in the mind of the Legislature at the time of its passage? We will answer this question. It undertook to do away with an existing evil. By the first section it eradicated the evil from all mortgages to be executed in the future; by the second section it went one step further and took into account mortgages that secured obligations then barred, and cut down the period of their limitation to two years. It might and perhaps should have gone further and cut down the period of limitation in which to bring suits on all mortgages then in force, but it stopped

with mortgages securing barred obligations and we must stop at the same point. This view is in accord with Little v. Reid, supra, which was approvingly cited in Stanton v. Gibbons, supra.

The judgment of the circuit court is reversed and the cause remanded, with directions to order distribution of the fund in controversy in accordance with the interlocutory decree in the partition suit and in accordance with the views herein expressed.

As this opinion is in conflict with the decision of the Kansas City Court of Appeals, in Stanton v. Gibbons, supra, the cause is certified to the Supreme Court for its decision.