LARRABEE *et al., appellants* v. THE FRANKLIN BANK *et al., Appellants.*

Division Two, March 14, 1893.

1. **Fraudulent Conveyance**: INSOLVENCY: PREFERENCE. An insolvent debtor may prefer a *bona fide* creditor in payment of his debts.

2. ————: ————: ————: CORPORATION. Such preference may be made by an insolvent corporation, as well as by a natural person, except where the preferment deprives the corporation of its ability to continue its business in due course, and compels it to suspend.

3. ————: ————: ————: ————. Insolvency of a corporation does not *per se* destroy its power to continue the management of its assets, but it may go on in due course of business so long as there is a fair and honest prospect of redeeming its fortunes, and it may pay its debts in regular course though some of its creditors are thereby deprived of their security.

4. **Voluntary Assignment**: PREFERENCE. A provision in a deed making a voluntary assignment in favor of creditors, which gives a preference to a creditor, is void under the statute. (Revised Statutes, 1889, sec. 424.)

5. ————. The assignment law is not in letter or spirit a bankrupt law. (*Hargadine v. Henderson*, 97 Mo. 375.)

6. ———: INSOLVENT CORPORATION: EQUITY. Where, however, an insolvent corporation transfers substantially all its property to the director of a creditor bank, thereby being compelled to suspend business, and then executes a deed of assignment for the benefit of its creditors as to the residue of its assets, the transactions will be deemed an evasion of the assignment law and equity will compel such creditor bank to share *pro rata* with the other creditors.

*Appeal from St. Louis City Circuit Court.*—HON. J. E. WITHROW, Judge.

AFFIRMED.

*P. F. Coste* for appellants.

(1) It is a well settled rule in this state that a preference of a *bona fide* creditor by an insolvent debtor is lawful and valid, and a corporation debtor has hitherto not been excepted from this rule. *Foster v. Planing Mill*, 93 Mo. 79; *Shelly v. Boothe*, 73 Mo. 74; *Dougherty v. Cooper*, 77 Mo. 528. (2) The recent theory that an insolvent corporation which contemplates an abandonment of its business cannot lawfully prefer a *bona fide* creditor is not based upon sound reasoning and should, if at all deemed an advisable restriction upon the common law of corporations, be promulgated and supported by statutory enactment, as it has been in other states. The weight of authority is opposed to the attempted distinction between an insolvent corporation and an insolvent individual as to the common-law right of preferring a *bona fide* creditor. *Catlin v. Bank*, 6 Conn. 233; *Smith v. Skeary*, 47 Conn. 47; *Dana v. Bank*, 5 Watts & Sergeant 223; *State v. Bank*, 6 Gill & Johnson 205; *Ringo v. Biscoe*, 13 Ark. 563; *Bank v. Whittle*, 78 Va. 737; *Dabney v. Bank*, 3 S. C. 156. (3) 1 Beach on Corporations [Ed. 1891] sec. 358, p. 582, says: "A corporation through a majority of its directors may make a transfer

of all its property in payment of one creditor, if it be done *bona fide;*" citing, *Buell v. Buckingham*, 16 Iowa, 284; *Town v. Bank*, 2 Doug. (Mich.) 530; *State v. Bank*, 6 Gill & Johnson 205; *Bank v. Morris*, 6 Gill & Johnson 363; *Catlin v. Bank*, 6 Conn. 233; *Sargent v. Webster*, 13 Met. 497. (Same author, Vol. I., p. 582): "Such a debtor corporation may prefer one creditor to another;" citing, *Niolon v. Douglass,* 2 Hill Ch. 443. (4) The payment of the Franklin bank and the subsequent assignment of the Cracker company for the benefit of its creditors are two separate and distinct acts and cannot be construed as one and the same act, that is, as one assignment for creditors, so as to have the effect of rendering the payment to the bank void as being a preference of a creditor in a voluntary assignment made under the statute. *Sampson v. Shaw*, 19 Mo. App. 274; *Hargadine v. Henderson*, 97 Mo. 375. The question seems to have been raised also in other states under similar statutes, and it has been held that the two acts will not be construed as one general assignment. *Watch Co. v. Meyer*, 30 Fed. Rep. 659; *Gilbert v. McCorkle*, 110 Ind. 215; *Mfg. Co. v. Smith*, 8 N. H. 348; *Low v. Wyman*, 8 N. H. 536; *Barker v. Hall*, 13 N. H. 298; *Henshaw v. Summer*, 23 Pick. 446; *Bates v. Coe*, 10 Conn. 280; *Worman v. Wolfersberger*, 19 Pa. St. 59; *Lampson v. Arnold*, 19 Iowa, 479. (5) This being a proceeding on a creditors' bill, no distribution should have been ordered by the judgment and decree to creditors who have not had the diligence to make themselves parties to this suit.

*J. M. Holmes* for respondents.

(1) The transfer of the accounts to the bank and of the stock to Mr. Moll, and the deed of assignment to Mr. Flitcraft, were parts of one entire transac-

tion, to-wit, a general assignment, under the stat-
ute, for the benefit of creditors. The transfers of
the accounts and of the proceeds of the stock to the
bank must be construed as though such transfer had
been incorporated in the deed of assignment. *White v.
Cotezhausen*, 129 U. S. 338; *Hard v. Foster*, 98 Mo.
297; *Clapp v. Nordmeyer*, 25 Fed. Rep. 71; *Weil v.
Pollack*, 30 Fed. Rep. 813; *Berry v. Cutts*, 42 Me. 445;
*Holt v. Bancroft*, 30 Ala. 200; *Perry v. Hoeden*, 22 Pick.
269; *Mussey v. Noyes*, 26 Vt. 471; *Van Horn v. Smith*,
59 Iowa, 142; *United States v. Bank*, 8 Rob. (La.)
302; *Claflin v. McLaughlin*, 65 Pa. 33; *Wallace v.
Wainrwight*, 87 Pa. 263; *Letcher v. Stapner*, 2 Duv.
423; *Wilson v. Snelling*, 3 Bush 322. (2) At the date
of the transfer of the accounts and the proceeds of the
stock to the bank, the insolvency of the Cracker com-
pany had been ascertained and established, and the
company had resolved to quit business and make an
assignment. These facts were known to the bank and
its officers. The transfers to the bank were not made
in due course of business, but were distributive pay-
ments, made in fraud of the rights of other creditors in
the assets of the Cracker company, and, in making such
payments, the directors of the Cracker company
exceeded their powers. *Wood v. Dummer*, 3 Mason,
308; *Rouse v. Bank*, 46 Ohio St. 493; *Eppright v. Nick-
erson*, 78 Mo. 490; *Foster v. Bank*, 92 Mo. 90; *Roan v.
Winn*, 93 Mo. 503; *Marr v. Bank*, 4 Caldwell, 471;
Taylor on Private Corporations sec. 759; Morawetz
on Corporations, sec. 803; Wait on Insolvent Corpora-
tions, sec. 162; *Richards v. Ins. Co.* 43 N. H. 263;
*Haywood v. Lumber Co.*, 64 Wis. 639; *Clyne v. Canal
Co.* 24 How. 262.

BURGESS J.—This is a suit in equity in the nature
of a creditor's bill by three creditors of the Kendall-

Boyce Cracker Company, joined as plaintiffs, against the Franklin bank, the Kendall-Bayle Cracker Company, its officers and directors, and P. R. Flitcraft, as assignee of the Kendall-Bayle Cracker Company, for the benefit of its creditors. The defense consists mainly in a denial of the allegations and charges of the bill.

The Kendall-Bayle Cracker Company was a corporation engaged in the manufacture and sale of crackers in the city of St. Louis. The stock of the company was full paid, and was owned in nearly equal proportions by Messrs. Kendall, Bayle, Daniels and Cole. The business of the company, at first prosperous, was conducted for a considerable period at a loss, and for some months prior to January, 1888, the company was in a very precarious financial condition. In December, 1887, the company owed to the Franklin bank $20,000, which was evidenced by several notes, a portion of which was indorsed by Mr. Cole and the remainder by Mr. Kendall, both of whom were directors of the company. It owed nearly the same amount to what may be termed outside creditors, amongst whom were plaintiffs, and these debts were wholly unsecured. They had assets of the value of about $15,000, divided in about the following proportions:

Stock on hand..........................................................$7,000
Good accounts .......................................................... 5,000
Leasehold, machinery and odds and ends......................... 3,000

The company was hopelessly insolvent and could no longer go on unless matters should change in some manner. To furnish a possible means of raising fresh capital, Bayle & Daniels surrendered their stock to the company for $1 each and retired. This situation was well known to the bank and its directors, and they knew that, unless fresh capital could be secured or better prices obtained for their crackers, the company would be compelled to suspend. They knew also that the

only chance for obtaining better prices for the product of the company lay in the action of the "cracker pool," which was to meet in January. They had a secret arrangement with the cracker company by which they were to be notified, when failure should take place, in time to protect themselves. Such was the situation in December, 1887. In the second week in January, 1888, a statement was submitted to the bank from which it appeared that the company was still loosing money. *Notice was then given by the bank to the company, that, unless the coming meeting of the "cracker pool," for which the bank agreed to wait, should relieve them, they must furnish additional security for the note next maturing— January twenty-sixth or twenty-seventh—or they would be "closed." The "cracker pool" met and refused to advance prices, the directors refused to indorse further and the concern was at an end.*

The directors of the company held a meeting on Thursday, the twenty-sixth of January, resolved to cease business and make an assignment. They instructed their attorney to prepare a deed of assignment, which he did, leaving the date blank. The deed was an ordinary assignment under the statute. On the same Thursday, or possibly on the morning of Friday, the twenty-seventh (the evidence is not clear as to which day), the directors of the company, accompanied by their attorney, Mr. Mills, went to the bank and notified them of their failure and of the fact that an assignment had been determined upon. The directors of the company, the attorney and the officers of the bank then entered into a consultation to determine the best method of "protecting the bank," and securing for it a preference over other creditors. Mr. Mills was of the opinion that the best method was to attach, as, in his opinion, any plan which required the visible co-operation of the company would be dangerous. Mr.

Garrells, the cashier of the bank, had, however, another plan. He was willing to "take the chances." The assets of the company consisted of a leasehold and machinery of small value (the machinery, with various odds and ends proved to be worth $1,500, and the leasehold proved to be worth $100 less than nothing), the stock on hand, manufactured and unmanufactured, good debts and bad debts. There was no money. Mr. Garrells had previously arranged with Mr. Moll, his co-director in the bank, and a co-defendant in this case, a method for turning the stock into money. His proposition then, at the meeting, was that the bank should take the stock and the good debts, and the assignee should take the machinery and the bad debts. He explained that drafts could be drawn by the company against all its solvent debtors, and turned over to the bank, and that Mr. Moll, one of its directors, could take the stock, thus converting it into money which would be paid over to the bank. This proposition was accepted. Mr. Moll was called up and reached the bank at the conclusion of the conference. He and Mr. Garrells then went to the factory of the company, and Mr. Moll examined the stock and arranged the terms of purchase. The drawing of the drafts and the making up of the invoice of the stock consumed all of that day and the next. At a late hour in the afternoon of Saturday, the twenty-eighth, the drafts having all been drawn and delivered to the bank, and the invoice having been completed, Mr. Garrells and Mr. Moll proceeded to the office of the cracker company. The president, Mr. Kendall, handed Mr. Moll the invoice. Mr. Moll handed him his check, he indorsed and handed it to Mr. Garrells, the latter balanced the bank book of the company then and there, passing this check to its credit, and received their check for such balance. At ten o'clock that night the blank date in the deed of assign-

ment was filled in, and it was executed and delivered to Mr. Flitcraft, the assignee, at the Laclede Hotel.   On the Sunday morning following the stock was transferred in wagons belonging to the various directors of the bank to the warehouse of Mr. Moll.   The bank realized from the drafts turned over $5,181.44, from the check of the cracker company, being the amount of Mr. Moll's check, less the amount the company was overdrawn, $5,695.95, making a total of $10,877.39, which they applied to their notes, due and not due.   In addition they collected from the indorsers about $3,000.   The assignee received, all told, less than $3,000.   Deducting expenses, he paid a dividend of five per cent.

On final hearing the court rendered the following decree:

"Wherefore the court doth order, adjudge and decree that plaintiffs have and recover of the defendant the Franklin Bank, the said sum of $10,877.39, together with interest thereon from said twenty-seventh of January, 1888, at the rate of six per cent. per annum, amounting in the aggregate to the sum of $13,107.26, together with costs of this action, and that an execution therefor be issued to the sheriff of the City of St. Louis in due form, and that the said sheriff, when he shall collect and receive the said sum shall pay the same to a receiver of the Kendall-Bayle Cracker Company for the creditors of the Kendall-Bayle Cracker Company, appointed by the court as hereinafter provided.

"And it is ordered and decreed that a receiver for the collection from the sheriff and distribution to the creditors of the said Kendall-Bayle Cracker Company of said fund be appointed as prayed in the petition, and P. R. Flitcraft is hereby appointed receiver for such purpose.   It is further ordered that the said P. R. Flitcraft before entering upon the execution of his said

trust execute and file in this court a bond in the penal sum of $25,000, with one or more sureties, to be approved by the court, conditioned for the faithful discharge of his duties as receiver under this decree, and for the faithful accounting for all the funds which may come into his hands as such receiver; that upon, the execution, approval and filing of said bond, the sheriff of the city of St. Louis shall pay over to said P. R. Flitcraft, receiver, all sums of money which he may collect or may have collected from the defendant, the Franklin bank, in pursuance of this decree; that the said P. R. Flitcraft, receiver as aforesaid, shall appoint a day within three months after the filing and approval of his bond as herein provided, and a place when and where he will proceed to adjust and allow demands against said fund. He shall give notice of such time and place by advertisement published in the Star-Sayings for four weeks successively, the last insertion to be at least one week prior to the day appointed. He shall also give notice to all of the holders of demands whose residence is known to him, by letter addressed to them, at least four weeks prior to the day appointed.

"That said P. R. Flitcraft, receiver, shall attend at the place designated in said notice in person on said day, and shall remain in attendance during said day and two consecutive days thereafter, and shall adjust and allow all claims and demands against said trust fund.

"The said P. R. Flitcraft shall, with all convenient speed, report to the court all claims and demands by him allowed or rejected for approval by the court, and also all costs and expenses of this suit and proceeding, including counsel fees to plaintiffs and a reasonable compensation to himself, to be determined by the court, and the balance of said fund he shall distribute as and

when the court may determine amongst the holders of demands allowed by him and approved by the court.

"It is further ordered that this action be dismissed as to the defendants, the Kendall-Bayle Cracker Company, George J. Kendall, Charles B. Cole, John Rankin, Adolph Moll and P. R. Flitcraft."

The court rendered a decree against the Franklin bank and in favor of the other defendants. The bank appealed and plaintiffs took a cross-appeal from the decree in favor of Mr. Moll.

It is well settled in this state that an insolvent debtor may prefer a *bona fide* creditor in the payment of his debts to the exclusion of others. *Foster v. Planing Mill Co.*, 92 Mo. 79; *Shelly v. Boothe*, 73 Mo. 74; *Dougherty v. Cooper*, 77 Mo. 528. And this rule applies alike to corporations and private persons, unless by such preferment it deprives the corporation of the power to continue in its due course of business and renders it necessary for it to suspend. "And it has been held that the insolvency of a corporation does not *per se* abrogate its power to continue the management of its assets, but that it may continue in its due course of business, so long as there is a fair and honest prospect of redeeming its fortunes, and may pay off debts in regular course of business, though a part of the creditors are thereby deprived of their security." *Foster v. Planing Mill Co.*, 92 Mo. *supra;* 2 Morawetz on Private Corporations, sec. 786, and cases cited. This question will be further discussed in the course of this opinion.

At the time of the sale of about all of the stock of the cracker company, and its solvent accounts against its customers to Mr. Moll, one of the directors of the defendant bank, the deed of assignment of the remainder of the stock and effects, which amounted to very little, had already been drawn up and was held up as is clearly shown by the evidence at the request of the

defendant bank until drafts were drawn by the cracker company on its customers in favor of the bank for all of its available and outstanding accounts, an inventory taken of the stock purchased by Moll when he gave his check in favor of the company for the amount of the purchase, and which was immediately turned over to the bank in part payment of the cracker company's indebtedness to it.    Then it was that the deed of assignment was executed by the cracker company and delivered to the assignee, Mr. Flitcraft.    Was this all one and the same transaction, and part of the same scheme?

If so, under the laws of this state the transaction between the cracker company and the defendant bank by its officers was void and of no effect, and the defendant bank must account for the amount realized by it from the transaction and share *pro rata* with the other creditors of the cracker company.    If not the same transaction, then it cannot be compelled to do so.    Section 424 of the Revised Statutes of 1889 provides that, "*every voluntary* assignment of lands, tenements, goods, chattels, effects and credits made by a debtor to any person in trust for his creditors shall be for the benefit of all the creditors of the assignor in proportion to their respective claims; and every provision in any assignment providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities (including judgments entered by confession thirty days previous to such assignment) shall be paid *pro rata* from the assets thereof; and every such assignment shall be proved or acknowledged. * * * "  Under this statute no preference of any creditor can be made by voluntary assignment, and a provision in a deed of assignment making such a preference is null and void and of no effect.   *Crow v. Beardsley*, 68 Mo. 437.

In the case of *Sampson v. Shaw*, 19 Mo. App. 274, where the debtor on the thirteenth day of June, 1881, executed a chattel mortgage on his personal property, and on the following day made an assignment by deed duly executed and there was no evidence whatever that the execution of the mortgage and deed of assignment were a part of the same transaction, or that the debtor was intending to make an assignment at the time he executed the mortgage, it was correctly held that the mortgage was valid upon the ground that while the mortgagor retained dominion of his property he may incumber and convey it as he pleases, if not directly forbidden by law, and prefer such creditors by payment and transfer as he chooses. *Wakeman v. Grover*, 4 Paige, 23; *Blakey's Appeal*, 7 Barr, 449; *Lampson v. Arnold*, 19 Iowa, 484.

So it was held by this court in the case of *Hargadine v. Henderson*, 97 Mo. 375, that, "The assignment law of Missouri is not in letter or spirit a bankrupt or insolvent debtor's act. A debtor, whether solvent or insolvent, may, in good faith, sell, deliver in payment, mortgage or pledge, the whole or any part of his property for the benefit of one or more of his creditors, to the exclusion of others, even though such transfers may have the effect of delaying them in the collection of their debts. Its terms in no way qualify the rule by which the character of this instrument is to be determined. Reading the instrument, then, as a whole, in the light of the circumstances under which it was executed, was it intended as a security, or as an absolute unconditional conveyance, *in presenti*, to the grantee of all the grantor's interest in the property, both legal and equitable, to the exclusion of any equitable right of redemption?" And it was accordingly held that the law of assignments was not applicable to a deed of trust, which conveyed all of the debtor's property,

real and personal (except his homestead, household furniture and a horse and buggy), to a trustee to secure the payment of a part of his debts for which he was liable either as principal or as surety; and that the deed of trust was not an assignment within the meaning of the assignment law, and that the instrument was binding and valid as against all other creditors.

This case as well also as the case of *Crow v. Beardsley*, *supra*, was followed and approved by the supreme court of the United States in the case of the *Bank v. Bank*, 136 U. S. 223. See also *May v. Tenney*, 13 Sup. Ct. Rep., number 17, 491; 148 U. S. 60; *Foster v. Planing Mill, Co.* 92 Mo. 79.

A different rule is announced by many courts of high authority, which hold that an insolvent debtor cannot so dispose of his property or the principal part thereof by sale, deed of trust or mortgage, so as to prefer one or more creditors to others at the same time intending to make an assignment for the benefit of his other creditors, as such disposition would be an evasion of the assignment law. This has been held in the following cases: *Preston v. Spaulding*, 120 Ill. 208; *White v. Cotzhausen*, 129 U. S. 329; *Berry v. Cutts*, 42 Me. 445; *Holt v. Bancroft*, 30 Ala. 193; *Perry v. Holden*, 22 Pick. 269; *Mussey v. Noyes*, 26 Vt. 471; *Van Horn v. Smith*, 59 Iowa 142; *United States v. Bank*, 8 Rob. (La.) 302.

The rule thus laid down has also been announced by the federal courts within this state so as to hold a deed of trust in the nature of a mortgage, of all the personal property of the debtor to be a voluntary assignment within the meaning and effect of the Missouri statute. *Martin v. Hausman*, 14 Fed. Rep. 160; *Dahlman v. Jacobs*, 16 Fed. Rep. 614; *Kellog v. Richardson*, 19 Fed. Rep. 70; *Clapp v. Dittman*, 21 Fed. Rep. 15; *Perry v. Corby*, 21 Fed. Rep. 737; *Kerbs v.*

*Ewing*, 22 Fed. Rep. 693; *Freund v. Yaegerman*, 26 Fed. Rep. 812, and 27 Fed. Rep. 248; *State v. Morse*, 27 Fed. Rep. 261. But these federal decisions have all been overruled or a different doctrine announced by the supreme court of the United States in the case of *Bank v. Bank* and *May v. Tenney, supra.*

But in the case at bar a different state of facts exists from those in either of the federal cases cited. Here the transactions were all parts of the same scheme, which, we hold, amounted to an absolute conveyance *in presenti.* It seems clear therefore, from the views herein expressed and the authorities cited, that the transfer to Moll, one of the directors of the defendant bank, of about all of the effects of the cracker company, which of itself compelled it to suspend business, and the execution of the deed of assignment were but one and the same transaction, in contravention of the statute in regard to assignments, and that the defendant bank by its officers, having notice of all the facts and circumstances and being party thereto, should not be allowed to profit by a transaction or scheme so transparent at the expense of the other creditors of the insolvent company, but on the contrary, should be held to share *pro rata,* with all of the other creditors. This is but equal and exact justice to all creditors, and such seems to be the spirit and intention of the law of assignments. As this necessarily results in the affirmance of the judgment, it is not deemed necessary to pass upon the other questions raised by counsel in the case. There was no error in dismissing the case against Moll. Judgment affirmed. All concur.