### DOE v. NORTHWEST COAL & TRANSPORTATION CO. et al.

#### (Circuit Court, D. Oregon. December 17, 1894.)

#### No. 2,156.

CORPORATIONS—INSOLVENCY—APPOINTMENT OF RECEIVER.

While the mere insolvency of a corporation is not enough to authorize the appointment of a receiver at the suit of its general creditors, yet when it clearly appears that on account of such insolvency, and the misconduct of its officers, the corporation is no longer able to proceed with its business, or its assets are in process of being fraudulently misapplied, to the injury of creditors, who are without other adequate means of relief, it becomes the duty of the court to appoint a receiver. Under such circumstances, the property of the corporation becomes a special fund, out of which creditors are entitled to satisfaction of their demands, and hence is the subject of an equitable lien or trust for their benefit.

This was a suit by Bartlett Doe against the Northwest Coal & Transportation Company, Samuel Coulter, and others, to obtain the appointment of a receiver of the corporation, and the administration of its assets as a trust fund for the benefit of its creditors. Defendants demurred to the bill.

Wirt Minor, for complainant.

Thomas H. Strong, for defendants Samuel Coulter, Sylvester Farrell, and James Humphreys.

Alex. Mernstein, for defendant A. J. Knott.

J. W. Whalley, in pro per.

BELLINGER, District Judge. This is a suit by a creditor of the defendant corporation for the appointment of a receiver to take possession of and administer its assets as a trust fund for the benefit of its creditors. The defendant corporation is organized under the laws of Oregon. It appears from the bill of complaint that the plaintiff at different times, at the company's instance, advanced money to pay its taxes and other liabilities, and to take up indebtedness of the company which it was unable to pay, and upon which it was threatened with legal proceedings, to an aggregate amount of about $6,800; that the company owes other overdue indebtedness, exceeding $50,000, all of which it is unable to pay, and that it is insolvent; that the defendant Coulter is president of the corporation, and his son Al. Coulter and the defendant Farrell

are directors therein. The complaint alleges that the defendants Farrell and Coulter, claiming to act as a majority of the company's board of directors, authorized the making of a note and mortgage to secure the same by the company to Farrell for $7,992.60; that said note and mortgage were executed in pursuance of such authority, Coulter being at the time president of the company; that such note and mortgage were without consideration, and were fraudulently contrived between such president and Farrell for the purpose of defrauding the creditors of the company; that Farrell claims to hold, as a purchaser, other notes of the company, made by Coulter as its president, for sums aggregating about $6,000, all of which notes are without consideration and were fraudulently issued, which facts were known to Farrell when he pretended to purchase them; that all of said last-mentioned notes were made payable to the order of Samuel Coulter, and were authorized by the votes of said Samuel Coulter and his son Al. Coulter, claiming to comprise a majority of the board of the company's directors, Samuel Coulter being at the time president of the company. It is also alleged that Farrell threatens to foreclose his mortgage for $7,992.60, obtained as described; that Samuel Coulter, by the authority of his own vote and that of his son, on said board, caused a note for $400 to be executed by the company, payable to his order, which note is without consideration; that said note for $400 was transferred by the said Coulter to the defendant Knott, who took the same with knowledge of its fraudulent character; that, through collusion between Knott and said Coulter, Knott has obtained a judgment on said note against the company in the state circuit court; that Samuel Coulter, acting upon the authority of a resolution passed by his own vote and that of his son, executed to himself, and without consideration, a note of the corporation for $1,000, which he assigned to the defendant Whalley, who took with notice of the fraudulent character of said note and of the insolvency of the corporation; that thereafter, and for the purpose of taking up said note, a note of the company for $1,-057.30, secured by a mortgage, was executed and delivered to Whalley; that this note and mortgage were upon the authority of a resolution of the directors of the company, adopted by the votes of Samuel Coulter, as president of the company, and Farrell, and that the same resolution was the authority for the note of $7,992.60 executed to Farrell; that the defendant Humphreys claims to hold liabilities of the company purchased from said Samuel Coulter, but that all such evidences of debt are fraudulent, and were contrived between Humphreys and Coulter for the purpose of defrauding the corporation and its creditors. It is alleged that the several defendants all knew that the corporation was insolvent at the time of taking the several notes and securities above mentioned, as it in fact was and is, but that they conspired together to defraud the corporation and its creditors. To this bill of complaint all the defendants demur upon the ground that the property of an insolvent private corporation is not charged by law with any trust or specific lien in favor of general creditors, and that a federal court has no jurisdiction to dissolve a corporation created by the state.

The insolvency of a corporation is not enough to authorize the appointment of a receiver at the suit of its general creditors. It is only where the creditor has acquired some special or equitable lien in the property of the. insolvent corporation that he is entitled to this remedy. Such is the general rule. This rule is without precise limitations as to what will constitute an equitable lien in favor of creditors in the property of insolvent corporations. In a recent and well-considered case decided in the circuit court of appeals for the Seventh circuit (Mr. Justice Harlan delivering the opinion of the court), it is held that where a corporation becomes insolvent, and determines to discontinue the further prosecution of its business, its property is thereafter affected by an equitable trust or lien for the benefit of creditors; and a receiver was appointed. The fact that the corporation had determined to discontinue its business was reached, not through any definite proceedings or declaration of the corporate authorities to that end, but from their manner of dealing with the property of the corporation, which resulted in transferring title to all its property, by a mortgage and deed of assignment, to another corporation, owned and controlled by the stockholders and managers of the grantor company. Manufacturing Co. v. Hutchinson, 63 Fed. 498. The reason why the mere insolvency of the corporation is not enough to authorize the appointment of a receiver is in the fact that it may be to the best interest of the creditors that its business should continue, and its financial embarrassment will not necessarily prevent that result. But when it clearly appears, as alleged in this case, that the corporation is insolvent, and that its creditors and president are fraudulently contriving to absorb all its property, and that such property is threatened with sale on collusive judgments obtained upon notes executed by the officers of the corporation to themselves without consideration, on the authority of their own votes as directors, the corporation is so far civilly dead that it is the duty of the court to administer its property as a trust fund for the benefit of its creditors. In such case the property of the corporation is affected by an equitable lien for the benefit of its creditors. Under such circumstances the ends of justice require the interposition of the court, by its receiver, to protect the rights of creditors. While an insolvent corporation, or one that, being insolvent, has made an illegal conveyance of property, or one whose officers have mismanaged their trust, may still be capable of continuing its business and of accomplishing the object for which the corporation was formed, and may be so engaged, and is therefore exempt from judicial interference at the suit of general creditors, yet when it clearly appears that, on account of such insolvency and the misconduct of its officers, the corporation is no longer able to proceed with its business, or its assets are in process of being fraudulently misapplied to the injury of creditors, who are without other adequate means of relief, it becomes the duty of the court to appoint a receiver. Under such circumstances the property of the corporation becomes a special fund, out of which creditors are entitled to satisfaction of their demands, and hence is the subject of an equitable lien or trust for their benefit. The general rules

invoked in support of the demurrers are not of universal application. The sound discretion of the court is always to be exercised, in view of the circumstances of the particular case, to promote the ends of justice.

The question of the forfeiture of the corporate franchise is not involved here. Actions for such purpose must be brought by the state. These actions are based upon some violations of law, or abuse of power, or some act or omission which amounts to a surrender of corporate rights. They must be brought by the state, since the question of such forfeiture concerns only the state. If the state is willing to overlook a wrong thus done to its authority, no one can complain. The preservation of the rights of creditors in the property of a corporation has no relation whatever to such question of forfeiture. The demurrers are overruled.