ADAM ROTH GROCERY COMPANY, Appellant, v. HOTEL MONTICELLO COMPANY et al., Respondents.

St. Louis Court of Appeals, May 17, 1910.

1. CORPORATIONS: Misappropriation of Assets: Action by Creditor: Parties: Misjoinder. In a suit by a creditor of a corporation against its officers for misappropriation of assets, the trustee in a deed of trust executed by the corporation for the benefit of all its creditors is a proper party only in case he confederated with the officers in the misappropriation and the deed of trust was executed to further the scheme, which he acceded to with knowledge of the fraudulent purpose.

2. ———: Insolvency: Transfer of Assets to Trustee. A failing corporation may transfer in good faith its assets to a trustee for the benefit of all its creditors, and may confer on the trustee the power to collect its assets and distribute the proceeds pro rata among the creditors, instead of resorting to a general assignment.

3. ———: ———: ———: Setting Aside. Whether administration of the estate of an insolvent corporation by an assignee or trustee appointed by the corporation will be interfered with by the courts depends on the facts and chiefly on the presence of good or bad faith.

4. ———: ———: ———: ———: Necessary Parties. In a suit by a creditor of a failing corporation to set aside a deed of trust executed by the corporation for the benefit of all its creditors, the creditors named in the deed of trust, or at least enough of them fairly to represent the others, are necessary parties.

5. ———: ———: ———: ———: Presumption Trustee Will Perform Duty: Evidence. In a suit by a creditor of a failing corporation to set aside a deed of trust executed by the corpora-

148 App—33

tion for the benefit of all its creditors, in the absence of proof to the contrary, it will be presumed the trustee will sue on demands owing the corporation, if he should.

6. ———: ———: ———: ———: Evidence Held Insufficient to Warrant Removal of Trustee. In a suit by a creditor of a corporation to set aside a deed of trust executed by a corporation for the benefit of all its creditors and to appoint a receiver for the corporation, it is *held,* under the evidence, there was no ground for removing the trustee or for appointing a receiver.

7. ———: Misappropriation of Assets: Conversion by Officers: Evidence Held Insufficient. In a suit by a creditor of a corporation against its officers for misappropriation of its assets based on their converting to their own use a specified sum of the assets, evidence *held* insufficient to show conversion.

8. ———: Purchase of Assets at Public Sale by Officer. Whether the purchase of property of a corporation at public venue to the highest bidder, at a mortgage sale, by an officer of the corporation, for his own use and benefit, where the corporation had ceased to be a going concern and its officers were no longer managing its business affairs, is unlawful, *quaere.*

9. ———: Retirement of Shares: Validity. A corporation has no right to pay the holders of shares of its capital stock their face value out of the company's money until the capital stock has been reduced.

10. ———: ———: Misappropriation: Evidence Held Insufficient. In a suit by a creditor of a corporation against its officers for misappropriation of its assets in retiring preferred shares of stock, evidence *held* insufficient to show misappropriation in the retirement of the preferred shares.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Williams,* Judge.

AFFIRMED.

*McShane & Goodwin* and *Geo. J. Bramsch* for respondents.

(1) A court of equity in this case has the power and jurisdiction to take charge of the assets of an insolvent corporation and distribute them ratably amongst its creditors upon a showing that the officers and agents of such a corporation, in charge of its assets, are wasting

and dissipating the same, and even though this is in the nature of a creditor's bill, yet such relief will be granted at the instance of a general creditor without him first having reduced his claim to a judgment and exhausted his remedy at law. White v. Land Co., 49 Mo. App. 450; Burnham, Munger & Co. v. Wm. F. Smith, 82 Mo. App. 35; Woolen Mills Co. v. Kampe, 38 Mo. App. 229; Bank v. Chattanooga, 53 Fed. 314; Doe v. Coal & Transportation Co., 64 Fed. 928; Tompkins v. Catawba Mills, 82 Fed. 780. (2) Funds of corporation cannot be used to purchase its own stock, thereby distributing its assets amongst its members and advancing its insolvency and dissolution. 10 Cyc., p. 168, sec. 22, p. 796, sec. 12. (3) An officer or director of a corporation cannot deal in his own behalf in respect to corporate property, or in respect to any matter involving the exercise of his duties as such officer or director. McAllen v. Woodcock, 60 Mo. 174; 10 Cyc., p. 799, sec. 16. (4) A mortgage to be effectual as to third parties must point out the property and describe it, so that third parties by its aid, and such aid as an examination would suggest, may identify the particular property conveyed. Bank v. Commission Co., 93 Mo. App. 123; Holmes v. Commission Co., 81 Mo. App. 97; Bank v. Schakelford, 67 Mo. App. 475; Vette v. Leonori, 42 Mo. App. 217. (5) An assignee of an insolvent corporation for the benefit of creditors cannot pursue assets fraudulently disposed of. Heinreichs v. Woods, 7 Mo. App. 236; Roan v. Winn, 93 Mo. 503; Harris v. Harris, 25 Mo. App. 496. (6) An assignee for the benefit of creditors has the right to pursue stockholders for unpaid stock subscriptions, but in so doing he must proceed in a court of equity. Lionberger v. Bank, 10 Mo. App. 499. (7) It being admitted that defendant corporation is insolvent; that it is a non-going concern and not in the exercise and use of its property and business; and it being further admitted that defendant corporation has,

by its own act, put itself out of the use and possession
of its own property and committed itself to liquidation,
it follows as a matter of course that if full and exact jus-
tice is to be done and the rights of the creditors are to
be preserved, that the court should take charge of the
assets of such defunct corporation and distribute them
ratably amongst its creditors and to accomplish this
purpose the court is authorized to appoint a receiver.
Buck v. Insurance Co., 4 Fed. 849.

*Jamison & Thomas* for respondent, J. William Tay-
lor.

(1)  One whose interest in the matter in contro-
versy is only that of a trustee must be sued as such,
and not as an individual.  R. S. 1899, sec. 545.  (2)
The mere execution of a chattel deed of trust by a cor-
poration does not constitute grounds for the appoint-
ment of a receiver.  Pullis v. Pullis, 157 Mo. 565; Jaf-
frey v. Mathews, 120 Mo. 317.  (3)  In the absence of
any proof of fraud a chattel mortgage or deed of trust
is valid as against all parties, if possession of the prop-
erty mortgaged is delivered to the mortgagee.  Weber v.
Armstrong, 70 Mo. 217; Albert v. Van Frank, 87 Mo.
App. 511; State ex rel. v. Cooper, 79 Mo. 464.  (4)  An
insolvent debtor can mortgage or pledge all or any part
of its property for the benefit of one or all of its cred-
itors.  Jaffrey v. Mathews, 120 Mo. 317; Bank v. Bank,
130 U. S. 223; Crow v. Beardsley, 68 Mo. 435; Harga-
dine v. Henderson, 97 Mo. 375.

*John H. Boogher* for respondent, Hotel Monticello
Company; *Dawson & Garvin* for respondent, *E. S.*
Boogher.

The Hotel Monticello Company was incorporated
November 22, 1901, with a capital stock of $30,000
owned by three shareholders, as follows:  One share

each by Charles M. Hill and Louis C. Irvine, and 298 shares by Charles W. McFarland, the shares being $100 par value. On October 22, 1902, or eleven months later, the capital stock was increased to $150,000, of which $100,000 worth was common stock and $50,000 preferred. The certificate of increase showed the stockholders had provided privileges for the preferred shares; they should be cumulative, dividend bearing shares and draw a dividend of eight per cent per annum, payable quarterly, out of the net yearly income earned in any year and before a dividend was paid on the general stock; the holders of preferred shares, in case of dissolution or liquidation of the company should have priority of payment over the holders of common stock, out of the assets after the payment of debts; a fund should be accumulated to retire the preferred stock after three years upon the payment of its par value to stockholders, together with an added amount of ten per cent of the par value. The certificate for the increase of the capital stock showed the assets of the company were $45,000, its liabilities $7000 and that of the $150,000 capital stock, $70,000, or seven-twelfths of the whole amount of the increase, had been paid up in lawful money of the United States and was in the hands of the board of directors. We understand the statement of the assets at $45,000 meant assets held prior to the payment of the $70,000 in cash upon the increase of the capital stock. A lease executed by Hattye Lederer, Edmund P. Nelson and Thomas H. Wagner as lessors and the Hotel Monticello Company as lessee, was executed November 27, 1905, by which the lessors let to the Monticello Company, for a term of twenty years from the date of the lease, a lot of ground fronting ninety-five feet on the east line of Kingshighway and having a depth eastwardly of one hundred and eighty-five feet on West Pine Boulevard in the city of St. Louis, and all improvements standing on the lot. The consideration for the lease was an agreement by the Monticello Company

to pay $246,000 as rental during the twenty-years' term at the rate of $1000 a month for the first ten years and $1050 a month for the second ten years, to pay all general and special taxes against the property, maintain the premises in repair, and to do other acts we need not state. The instrument of lease declared a violation of its covenants should work a forfeiture and end the term with all the rights and responsibilities accruing thereunder, if the innocent party elected to declare a forfeiture in writing; further provided the Monticello Company, as lessee, should execute and deliver to the lessors, forty days after the execution of the lease, a chattel mortgage on the furniture, fixtures and personal property kept and used by said lessee on the premises as security for payment of rent, taxes and other charges the lessee bound itself to pay. Pursuant to that term of the lease a chattel morgage was executed December 30, 1905, covering the furniture, fixtures and personal property of every kind on the premises and in the building and was made to embrace other similar personal property, furniture or fixtures thereafter acquired by the Monticello Company and placed in the buildings and premises. A second chattel mortgage was executed by the Monticello Company on May 15, 1906, to E. P. Nelson on the property described in the first mortgage to secure thirty-five notes of $350 each, falling due at various dates from June, 1906, to May, 1909, and drawing interest at six per cent per annum. Each mortgage empowered the mortgagee to take possession of the property conveyed, upon the mortgagor's default, and to advertise the property for sale and sell it at public auction to the highest bidder for cash, after giving the prescribed notice. Transactions occurred later looking to the retirement of shares of preferred stock in the Monticello Company by the holders of shares of the common stock, pursuant to terms provided by the shareholders and recited in the certificate for the increase of the capital stock. On October 21, 1902, the Monticello Com-

pany entered into an agreement with the Germania Trust Company of the city of St. Louis, which recited, the holders of the common stock of the company had the option to retire the preferred stock in 1902 at $110 a share; the holders of both kinds of stock had agreed to deposit with the Trust Company $1000 payable quarterly, until the preferred stock had been retired in full as aforesaid; the Monticello Company was to designate in writing to the Trust Company when any preferred stock was to be retired, and the amount to be retired, and was to have the certificates of those shares delivered to the Trust Company for cancellation, and said Trust Company was to hold the cancelled certificates as its receipt for money paid by it out of whatever funds it might receive from the Monticello Company as a sinking fund for the retirement of preferred stock; the Trust Company agreed to receive and hold on deposit all sums offered by the Monticello Company to retire preferred shares. At a directors' meeting on December 5, 1903, a resolution was passed regarding the contract between the Monticello Company and the Germania Trust Company. The purport of the resolution and its recitals was that after the termination of the World's Fair in St. Louis, the Monticello Company might find itself embarrassed for money wherewith to meet the sinking fund it was to create with the Trust Company for the retirement of preferred shares, but the earnings expected during the World's Fair period would enable the Monticello Company easily to retire the preferred stock, thus reduce the burden on the corporate assets and save the eight per cent dividend payable annually on preferred stock; that the present owners of preferred stock were willing the contract between the Monticello Company and the Trust Company should be altered and the president of the Monticello Company was authorized to enter into a contract in lieu of the previous one, by means of which the preferred stock with its accrued dividends should be retired if possible out of the net earnings

of the corporation during the year 1904. A supplemental agreement was made between the Monticello Company and the Trust Company on January 15, 1904, pursuant to a resolution of the board of directors of the Monticello Company passed December 5, 1903. The substantial terms of the supplemental agreement and its recitals were these: The Monticello Company had procured from the holders of the five hundred shares of preferred stock their certificates of shares and had caused the same to be deposited with the Trust Company subject to the terms of the supplemental agreement of January 15, 1904; the Monticello Company should deposit with the Trust Company from time to time, for the purpose of creating a sinking fund, all the net earnings of the Monticello Company from June to November, 1904, inclusive, provided that if said deposit did not amount to $60,000 by December 1, 1904, the Monticello Company should continue to deposit the net earnings for two years more or until $60,000 had been accumulated with the Trust Company; the Trust Company should hold said deposit until $60,000 had been accumulated and then should apply the money to pay the preferred shares at the rate of $110 par value, plus accumulated dividends; provided the Hotel Company should, after the deposit amounted to $60,000, provide for the reduction and decrease of its capital stock to the amount of $50,000, in the manner required by law; provided, further, if the deposit did not reach $60,000 within two years after December, 1904, the capital stock should be reduced to an amount five-sixths as large as the amount of the deposit or as near said ratio as might be, and the preferred shares should be paid by the Trust Company, to the amount of the deposit had on hand, at the rate of $110 par value; or if the capital stock should be reduced in a sum less than $50,000, the Trust Company should pay from said trust fund the preferred shares to an amount equal to the amount of the reduction of the capital stock, but not to exceed five-sixths of the

amount of the deposit with the Trust Company. It was further stated the Monticello Company might, at any time during the period provided for the accumulation ,of the fund to retire the preferred shares, arrange for a reduction of its capital stock by a vote of its stock-holders to any sum equal to five-sixths of the deposit on hand with the Trust Company, and then have the said deposit applied at any time to pay the preferred shares in order that the Monticello Company might escape the payment of dividends; that when preferred shares were paid, they should be retired and paid by the Trust Company. So much has been said regarding the preferred shares of the Monticello Company, because the chief matter of complaint in the brief for appellant relates to those shares. It appears further that on January 14, 1907, the Monticello Company served a written notice on the Germania Trust Company, saying as follows: During the World's Fair year, 1904, the Monticello Company had earned approximately $35,000 which was intended to be applied by the Trust Company under existing contracts for the retirement of the shares of outstanding preferred stock; the terms and conditions of those agreements had been satisfied, evidence of which had been given by the receipt of John H. Boogher, the owner and holder of the beneficial certificates mentioned in the agreement; said holder of preferred stock was willing to acknowledge payment thereof to the Trust Company and relieve the Monticello Company from further liability; the company, meaning the Monticello Company, having satisfied the grantee thereof, gave notice to the Trust Company that after January 14, 1907, the total outstanding liability was $15,000 which was to bear interest from January 1, 1907, payable semi-annually, January first and June first of each year; that thereafter no preferred shares would be issued in excess of the above mentioned sum, namely, $15,000 or 150 shares of the par value of $100 each. During the month of January, 1907, the respond-

ent Mrs. Elizabeth S. Boogher, at that time Mrs. White, acquired an interest in the Monticello Company by purchasing $15,000 of the par value of the preferred stock. Her testimony suggests the company was then badly in arrears and being pressed for payment of its obligations, but just how much it owed is not shown.  Mrs. White later married Mr. John H. Boogher, who had been an officer of the Monticello Company for years. He remained vice-president and secretary after the purchase, she became president and general manager and, in fact, operated the hotel until February 19, 1908, and her son Frank M. White acquired one share and became a director.  She, too, was a director and so was John H. Boogher.  Frank White acquired his share of stock January 14, 1907, and according to his answer was elected a director that day.  Mrs. Boogher states in her answer she acquired her stock in January, 1907, not stating the day.  Mrs. Boogher put improvements on the property out of her own money to the amount of $5000, thereby becoming a creditor of the company in said sum.  Though custom increased and expenses were reduced under Mrs. Boogher's management, the creditors of the company were pressing and business dull; hence the obligations of the company could not be met and in February, 1908, the company executed a deed of trust on the household furniture, fixtures and chattels of every kind in the hotel building, and all the other personal property of the Monticello Company situated in and about the premises, "including all cash, bills, book accounts, claims, demands, choses in action, judgments, evidences of debt and all books, consisting of ledgers, journals, cash books, day books, blotters, memoranda and all other books and papers showing any such accounts, claims, choses in action, judgments and demands, and any and all other property of any name and description whatsoever of the said party of the first part and wheresoever situated, including the goodwill, leases and leasehold estates and hereditaments be-

longing to said party of the first part; it being the intention of this conveyance to sell, assign and convey to said party of the second part any and all property belonging to said party of the first part, wherever situated, whether herein specifically mentioned and described or not." The trustee Taylor was given power to collect all sums of money owing the Hotel Company and for that purpose might institute and maintain suits at law and in equity, or use any means deemed proper by. him. The deed of trust was for the benefit of one hundred and one creditors of the Monticello Company who were named and the amount of each claim specified, the several amounts totalling about $30,000. Appellant, Adam Roth Grocery Company, was one of the enumerated creditors and its claim is stated to be $1580.81, though the evidence shows its demand consisted of two promissory notes of $290.10 each, dated January 17, 1907, payable in thirty and sixty days after date with six per cent interest. Possibly it may have held an open account against the Monticello Company besides. The deed of trust to Taylor, after enumerating the one hundred and one creditors, said the intention of the instrument was to secure those creditors the amounts actually owing them, whether correctly stated or not, and, furthermore, to include among the beneficiaries of the deed of trust, all creditors and other persons having just and lawful demands and claims against the Monticello Company whether named or not. In case default was made in payment of the notes, debts, obligations or any part thereof, or any one of them, or of the interest due thereon, it was provided the conveyance should remain in full force and effect, and the trustee or his successor should take immediate possession of the property and effects conveyed, should proceed to sell the same, or a portion thereof, at private sale in such manner as he might deem best, or when he deemed it would be to the advantage of all the beneficiaries, might sell the property and effects, or the remainder, or any part thereof,

at public sale, upon conditions we need not relate. After the execution of this deed of trust the trustee Taylor took possession of the hotel building and premises and the personal property in them, and believing it to be for the best interest of all parties concerned, continued to operate the hotel, Mrs. Boogher, the previous manager, remaining in charge, but conducting it for the trustee. While affairs were in that condition and on March 3, 1908, appellant, the Adam Roth Grocery Company, instituted this action, which is in the nature of a suit in equity against the Monticello Company, Elizabeth Boogher, John H. Boogher, Frank M. White and J. William Taylor. The petition alleges various facts already stated about the organization of the Monticello Company and the increase of its capital stock, that since January, 1907, and long prior thereto, respondents Elizabeth and John H. Boogher and Frank M. White have been managing and directing officers of the corporation, and in complete control of its property and assets except as afterwards stated, and hold the offices heretofore stated; alleges the Monticello Company is indebted to appellant in the two notes mentioned and also states its indebtedness on an open account to the amount of $576.89; alleges that on October 23, 1907, the Monticello Company's assets aggregating $50,000 were in the possession of the individual respondents as its officers, and the liabilities of the corporation did not exceed $21,500; that since said date the individual respondents had unlawfully converted the property and assets of the company to their own use and had concealed and disposed of them to the extent of one hundred thousand dollars, thereby completely depriving the corporation of the use and ownership of its assets and appellant of an opportunity to collect its demands out of them; alleges the assets were only $25,000 and its liabilities exceeded $30,000 at the date of the filing of the petition; alleges the capital stock of $150,000 was not fully subscribed at the time of the increase of the stock;

in fact only about $115,000 had been actually paid to the treasurer of the corporation by the various subscribers and there was a sum due and owing the corporation on the capital stock in the sum of $35,000 or more; that the parties from whom said sums were due were unknown to the petitioner and could only be ascertained by an inspection of the books and records of the company; that the officers of the company, Elizabeth A. and John H. Boogher and Frank White, had failed to enforce payment of the balance due on said capital stock; then alleges the Monticello Company was indebted to various persons in the sum of $30,000, a great portion of which indebtedness was unpaid and past due; that a large number of suits had been instituted against said company and judgments procured thereon and executions sued out on said judgments and an effort was being made to enforce the same against the property of the company; then alleges the assets of the Monticello Company consist of the leasehold aforesaid, together with the furnishings and fixtures used in the operation of the hotel, the business of said company and a large number of outstanding accounts due from the patrons for board and lodging; alleges next the reservation in the instrument of lease of a first lien on said assets to secure the payment of rent, taxes and assessments reserved in the contract of lease to be paid by the Monticello Company; alleges also the second mortgage aforesaid and that the amount due on the debt secured by said mortgage was $6000; that the officers of the company had been neglecting the business and wasting and misappropriating the property and assets, had permitted defaults to occur under both chattel mortgages, and the holders of them were threatening to foreclose; that the officers of the company were aiding and abetting said foreclosure so they might be enabled to purchase the property at the foreclosure sale and secure the same for their own benefit; that Taylor was not operating the property under any authority granted in

the deed of trust to him, had given no security for the faithful performance of his duties, and his acts were not in any manner under the control of the company; that the conveyance was made for the use and benefit of said Elizabeth S. Boogher, who claims said corporation is indebted to her in the sum of $5000; that Taylor is the personal selection and representative of her interests and subject to her control, wishes and interests and not to the interest and wishes of the creditors of the company; that the conveyance was made to encumber and tie up the assets of the company so its creditors could not reach them, instead of for the benefit of creditors; that the company is insolvent and the Adam Roth Grocery Company and other creditors of it have no adequate remedy whereby their rights may be preserved, and unless a receiver is appointed as prayed in the petition, the petitioners and all other creditors are in grave danger of losing their accounts. Instead of giving the prayer for relief contained in the petition, it will elucidate better the objects of plaintiff to excerpt from its brief the relief asked:

"The purpose of the action is to cause all of the said personal defendants and all other officers, agents and trustees of said defendant corporation, to account for their official conduct in the management and disposition of the funds, property and business committed to their charge; to order, decree and compel payment by them to said defendant corporation and to its creditors of all sums of money, and of the value of all property which they have acquired to themselves, or transferred to others, or may have lost or wasted by any violation of their duties, or abuse of their powers as such directors, managers, trustees or other officers of said defendant corporation; that the court will fully administer as a trust fund all and singular the property, rights and business of said defendant corporation, including said hotel, with all and singular its appurtenances so held by lease as aforesaid, and will marshall

all assets and ascertain the several respective liens and priorities existing thereon, and enforce and decree the right, liens and equities of each and all creditors of said defendant corporation as the same may be finally ascertained and decreed by the court; that for the purpose of enforcing the rights and equities of the creditors of said defendant corporation, as well as protecting the rights, interest and property of said defendant corporation, as well as to preserve the unity of the business and property of said Hotel Monticello Company, and of preventing the disruption thereof by separate executions or foreclosures, and of preventing the loss and forfeiture of its leasehold and other property, this court forthwith appoint a receiver of all and singular the property rights and assets of every nature and wheresoever situated, held, owned or controlled by said defendant corporation, together with all rights and contracts, with full authority to operate and manage the same under the direction of the court; that all the officers, managers, agents and employees of said defendant hotel company, and that defendant J. Wm. Taylor, a trustee for the creditors appointed by defendants, be required forthwith to deliver to said receiver the possession of all and singular, each and every part of said property and assets of said defendant and corporation wheresoever situated, also all books and records of said defendant corporation in any way relating to its business or the operation of said hotel; that at such time as may be found just and proper the property of said defendant hotel company may be ordered to be sold and the proceeds distributed among those entitled thereto, and for such other and further relief as to the court may seem proper and necessary to fully protect and enforce the rights and equities of your petitioner and all other creditors of said company."

Separate answers were filed by each of the defendants, but we need not recite their contents further than to say they denied all misappropriation of assets, wast-

ing of same, neglecting the business of the company and fraudulent or colorable conduct, or that the deed of trust to Taylor was made for any other purpose than the one it purports to have been made for; deny in short all the allegations of wrongdoing. In one or the other of the answers most of the facts in connection with the life and business of the Monticello Company are developed; Taylor alleges his possession of the assets as trustee, subject to the possession of the mortgagors, which is acquiesced in by all the creditors except plaintiff. A statement rendered by Frank White, a director of the company, to the Bradstreet Agency on October 24, 1907, showing the amount of the common and preferred stock of the company and its assets and liabilities, was put in evidence. This statement showed $2000 cash on hand; bills receivable $50,000; merchandise on hand $5000; machinery and fixtures $68,000; leasehold valued at $60,000 and the good will of the business and new construction of buildings, $10,000. The liabilities shown were capital stock paid in $115,000, accounts payable $10,000, chattel mortgages on all kinds of property $6500; money borrowed from banks, $5000, total liabilities $136,500. This made a prima facie showing at said date of $13,500 over and above all liabilities. It also showed the amount of the year's business was $100,000 and annual expenses $80,000; insurance on merchandise and fixtures $50,000; insurance on buildings and plant $140,000. Entries from the records of the meeting of the board of directors of the Monticello Company were also put in evidence, but we need not recite them. The trustee Taylor collected but little money, for about all the property conveyed to him by the deed of trust, except the bills receivable due the Monticello Company, was taken possession of by the mortgagees under the first chattel mortgage and afterwards by the mortgagees in the second chattel mortgage and the lease was declared forfeited. A sale of the furniture and fixtures under these mortgages occurred and Mrs.

Boogher bid in the furniture in order to protect herself as a general creditor of the Monticello Company, afterwards selling the furniture to the Revere Realty Company at a profit; and this is one matter of complaint, though not charged in the petition, it being contended her purchase at the sale under the mortgage accrued to the benefit of the Monticello Company. It seems she paid $8000 and sold for $37,000, taking in payment from the Realty Company, she said, notes executed by the Buckingham Hotel Company. She testified, however, as we understand, that besides the amount bid for the furniture, she had to clear off liens amounting to many thousands of dollars, mechanics' liens and some notes she had assumed. The general tenor of her testimony is that she made a small profit, but only a small one by the purchase. The forfeiture of the lease and the foreclosure of the two chattel mortgages on the furniture and fixtures and personal property, had occurred prior to the hearing below of the present suit.

GOODE, J. (after stating the facts).—In the joinder of parties defendant and allegations and varieties of relief prayed, the petition appears to be multifarious and an objection on that score was lodged against it, but only in the answers. We think of but one contingency in which Taylor would have been a proper co-defendant with the officers of the Monticello Company to a bill charging said officers with having wasted and misappropriated the assets of the company. That contingency was a confederacy of the officers to misappropriate its assets and the execution of the deed of trust to Taylor to further the scheme, which he acceded to with knowledge of the fraudulent purpose. Unless there was a transaction of that character, Taylor had no connection with any unlawful diversion of the assets by his co-defendants, but such a diversion raised an independent

case against them to which he ought not to be a party. The record contains no word of proof of any conspiracy between Taylor and the other defendants to make away with the assets of the company, or hinder or defraud any of its creditors; not a word to prove any illegal act or purpose to which Taylor was a party. His connection with whatever occurred was confined to the trusteeship in the deed of trust executed by the company on February 20, 1908, which instrument transferred all the assets of the company for the benefit of all its creditors, and instead of creating preferences, declared if the hundred or more creditors enumerated were not all, the deed should enure as well to the benefit of those omitted. The company had the right to transfer its assets in that manner and for the stated purpose, instead of resorting to a general assignment. We understand counsel for plaintiff to contend the corporation, if insolvent, could not dispose of its property by a deed of trust to Taylor which would put it out of business, because its assets, in the event of insolvency, became a trust fund for the benefit of its creditors, and a court of equity should administer the assets for their benefit and appoint a receiver to take over the property and collect those not in possession, including liabilities on unpaid shares of stock; that the court should settle priorities and claims among creditors, distribute the assets among them according to their priorities and the amounts of their demands, and wind up the company. We do not assent to that proposition as one applicable to every instance, regardless of whether the company had attempted to dispose of its property to pay its debts and of whether or not there was fraud in the disposition made by the corporation. We hold a failing company, acting in good faith, may itself provide for the distribution of its assets or their proceeds among its creditors, by conveying them to a trustee and conferring on him the power to collect and sell assets and distribute the proceeds. In some measure the assets of an insol-

vent corporation, which is not able to continue in business, are treated as a trust fund for the benefit of creditors, and the right of the company to dispose of them is abridged on the theory that, if the company can no longer pursue the ends it was created for, the law may lay hold of its property to distribute it among creditors as they are entitled. But we do not understand that if this policy of the law will be attained as well by a disposition of the property made by the company itself, the courts will insist, nevertheless, on taking charge. Whether administration by an assignee or trustee appointed by the company will be interfered with, will depend on the facts, and chiefly on the presence of good or bad faith. The courts have considered mainly the validity of preferences in transfers of property by companies to pay debts and have upheld the right to prefer creditors in good faith; and certainly if there is such a right, then a *bona fide* transfer of assets to pay all creditors *pro rata* is valid. [Larrabee v. Franklin Bank, 114 Mo. 592, 21 S. W. 747; Alberger v. Bank, 123 Mo. 313, 27 S. W. 657; Lyons-Thomas Hdw. Co. v. Stove Co., 22 L. R. A. 802.] The cases cited by counsel for plaintiff where such conveyances were set aside and a court of equity took charge of the assets and wound up the company, contained elements of fraud which vitiated the conveyances made by the companies; the fact of fraud consisting of an unlawful preference of the officers of the company as creditors or some other disposition of the assets incompatible with just distribution. [Kankakee Mill Co. v. Kampe, 38 Mo. App. 239; Merchants Bank v. Const. Co., 53 Fed. 314; Doe v. Transportation Co., 64 Fed. 928.] In certain cases plaintiff invokes, the courts upheld the instrument by which the company disposed of its assets and merely settled by decree some question between creditors as to their respective demands against part of the assets. [White v. Land Co., 49 Mo. App. 450; Burnham v. Smith, 82 Mo. App. 35.] Just here it is proper to say the creditors in the

deed of trust to Taylor would be necessary parties in a suit to set aside the conveyance; or, at least, enough of them fairly to represent the others would be necessary. Plaintiff alleged it filed its bill for the benefit of all creditors who might wish to come in and take advantage of the relief granted, but the evidence fails to show any creditor but him has objected to the deed of trust. We will remark further, before passing the case as regards Taylor, that as soon as he took possession as trustee under the deed of trust to him, the mortgagees in prior incumbrances on the property supplanted his possession under said deed, but arranged with him to hold possession for them; conduct which is far from suggesting want of confidence in him; much less that he was in a scheme to defraud creditors in the interest of Mr. and Mrs. Boogher and Frank White, by making away with assets; for all that went into his hands under the third incumbrance were sold from him under the prior incumbrances. It seems he collected some accounts and maybe got in about $1000 which might go to the creditors mentioned in the conveyance to him. The only way in which he could assist a fraudulent enterprise would be by omitting to collect assets; but that he had done this or anything else that was wrong, or was under the domination of his co-defendants, the officers of the Monticello Company, there is no proof. The terms of the conveyance are broad enough to empower him to sue for what was owing on unpaid shares, and, presumably, in the absence of proof to the contrary, he will sue if he should. [Lionberger v. Bank, 10 Mo. App. 499.] We perceive no ground in the present record for removing Taylor from his trusteeship, or for the court to appoint a receiver of what little assets have come into his hands.

Looking at other allegations of the bill, we find Elizabeth and John H. Boogher and Frank White, officers of the Monticello Company, charged with having converted $100,000 of its assets between October 23, 1907,

and the date the petition was filed, March 3, 1908. The averment is that after the first date said defendants unlawfully converted said amount of the property and assets of the Monticello Company to their own uses and hid, concealed and disposed of said assets. We believe the only evidence relied on as proof of the charge was the statement furnished to a Mercantile Agency by Frank White, October 23, 1907. The assets shown in the statement were machinery, and fixtures in the hotel valued at $68,000, the leasehold at $60,000, the good will of the business $10,000, merchandise $5000 and bills receivable $5000, which items composed $148,000 of the $150,000 of assets. The machinery and fixtures, the leasehold and the good will, were lost to the company by the foreclosure of the first two chattel deeds of trust, and leaving out of view the purchase of the furniture by Mrs. White at the sale under said incumbrances, which will be dealt with infra, it will not be contended defendants converted to their own use any of the machinery, furniture, fixtures, leasehold or good will. The merchandise, bills receivable and $2000 cash on hand at the date of the statement, could have been appropriated, but there is no evidence to prove any part of either item was, and it is not contended there is evidence of that tendency. The accusation that defendants made away with $100,000 worth of assets, vanishes on scrutiny.

It is alleged in the petition Mr. and Mrs. Boogher and Frank White aided and abetted foreclosures of the mortgages in order to acquire control of the property for themselves; but this charge also is unsupported. After Mrs. Boogher acquired part of the stock of the company and took charge of the hotel, she improved and added largely to the furniture in the rooms and painted and decorated the interior of the hotel at her own expense, thereby becoming a creditor of the company for a considerable sum. The evidence shows clearly the failure of the company was due, in part, to the

financial panic which was coincident with her manage-
ment, but mainly to the insistence of creditors, whose
debts had accumulated under prior management, that
they be paid, and their refusal to wait until she could
put the hotel on a paying basis and discharge the com-
pany's liabilities.

Complaint is made that Mrs. Boogher purchased
the furniture at sales under the first and second deeds
of trust and afterwards sold it at a profit, which she
retained instead of turning it in to the company or to
Taylor the trustee. The purchases were made at sales
at public vendue to the highest bidder and we doubt if
the law is against Mrs. Boogher's buying for herself
under those circumstances; especially when the com-
pany had ceased to be a going concern and the officers
were no longer managing its business affairs. How-
ever, we decide nothing on this point, because it is not
in the case. The petition contains no averment regard-
ing the matter, which, indeed, transpired subsequent
to the filing of this suit.

We have found no clear evidence that unpaid shares
of stock were outstanding, whereon the liability of the
stockholders should be enforced. We do not say there
is no such liability, but merely that it was not proved,
and, in truth, no great stress is laid upon that phase of
the case.

The validity of the retirement of preferred shares
to the amount of $35,000 in January, 1908, and just be-
fore Mrs. Boogher acquired her interest, looks dubious.
The preferred shares constituted a liability of the com-
pany, and the company had a right to retire them in a
prescribed way, which involved a reduction of the
amount of the capital stock. The present record leaves
in obscurity the circumstances of the surrender of said
shares. We cannot ascertain whether they had been
issued by the company to individuals or were treasury
stock; or, if they had been issued, whether the holders
had paid for them. As shown in the statement, supra,

the plan provided for the retirement of the preferred shares was to create a sinking fund through a series of years to take them up. This arrangement was altered by reason of the prosperity of the company during the World's Fair period of 1904, as the officers of the company believed the profits of said year would suffice to retire the shares and that the welfare of the company would be advanced by retiring them at once. The shares appear to have been entrusted to the Germania Trust Company, to be surrendered by it when enough money to pay them was deposited and after proper steps had been taken to reduce the capital stock of the hotel company. As far as we can discern from the evidence, this step was not taken, and we know not why the shares passed from the custody of the Germania Company. The only positive testimony on the subject of their retirement was that of Mr. Boogher, who said the company made $35,000 during the World's Fair which was used to pay old debts, and in consideration of the old debts having been paid, he, as "holder of all the preferred stock certificates, closed the matter and the preferred stock was simply cancelled." That explanation of the transaction is not clear, though we do not mean to intimate it suggests illegality, but merely that it does not explain the affair so as to render it intelligible to a person unfamiliar with the facts. Plaintiff seems to complain that cash of the company was used to retire the shares, which constituted a diversion of the company's assets. We can think of no condition that would make it right for the company to pay the holders of the shares their face value out of the company's money until the capital stock had been reduced. But there is no proof such a course was pursued. Boogher's testimony indicates he held the shares for himself or in some trust capacity—strictly considered, that he held them as owner—and because the debts of the company to the face value of the shares had been paid out of the company's earnings, he surrendered the shares for can-

cellation. The transaction is puzzling; but it was not shown the assets of the company were applied to pay for the shares. On the' contrary, Boogher's testimony went to prove the company's cash was used to pay its debts, and for some reason, he was willing to cancel them after the company's debts were paid. But this fact is to be noted: The cancellation did not occur until January, 1908. We decide nothing whatever about the legality of that transaction, but simply say there is no evidence in this record of a misappropriation of the company's assets in connection with it.

In conclusion we wish to say that not only is the petition rambling and multifarious, but the little evidence adduced is vague and fragmentary, and really leaves the gist of the case, to-wit, the retirement of the bulk of the preferred shares, incomprehensible. It is clear, however, that no ground was shown for removing the trustee or appointing a receiver. If Mr. Boogher, or any one else, received something for the preferred shares, and ought to account for what was received, a proceeding would lie against such person in the name of the proper plaintiff.

The judgment is affirmed. All concur.